Luttrell B. COX, Plaintiff,

Sherwood Cox, Plaintiff-Appellant,

Alvin P. Lockett, Sr., et al.,
Plaintiffs-Intervenors,

Anthony White and Henry Clark, Sr.,
Plaintiffs-Intervenors, Appellants,

v.

ALLIED CHEMICAL CORPORATION et al., Defendants-Appellees.

No. 75–2109.

United States Court of Appeals,
Fifth Circuit.

Sept. 15, 1976.

Donald Juneau, Hammond, La., for appellants.

· Victor A. Sachse, III, Paul M. Hebert, Jr., Baton Rouge, La., for Allied Chemical Corp.

James D. Thomas, II, Baton Rouge, La., for Local 216, etc.

Before TUTTLE, AINSWORTH and GEE, Circuit Judges.

TUTTLE, Circuit Judge:

This Title VII suit involves a plant-unit seniority system currently in effect at the Baton Rouge plant of appellee Allied Chemical Corporation, and the effect of an EEOC conciliation agreement on the right of certain appellants to sue the company and the appellee union. Following a finding that the unit seniority system used by Allied had violated the Title VII rights of two black employees who had been laid off or demoted as a result of cutbacks within their respective units, the district court granted relief in the form of back pay, but refused to reinstate these plaintiffs or to enjoin any further use of the system.

In this appeal, we consider first whether two appellants who were signatories to an EEOC conciliation agreement dealing with the use of the unit seniority system at the plant were properly dismissed as intervenors by the district court. We also consider the argument that the district court erred in dismissing the claims of a white plaintiff on the grounds that his Title VII rights had not been affected by Allied's unit seniority system.

In its opinion,[1] the district court made lengthy findings of fact and conclusions of law, the pertinent portions of which are briefly summarized as follows. In 1966 Allied Chemical Corporation purchased the Baton Rouge Plastics Division plant from W.R. Grace and Company. At that time, and until August 1971, the plant's hourly employees were divided into four work "units:" Production, Services, Maintenance, and Stores. The racial composition of the latter two units, both at the time of the institution of the present suit and at all times prior to that, was white. At the time of the plant's purchase by Allied, the Production unit was all white and Services all black; however, as a result of a collective bargaining agreement signed in 1967, a substantial number of blacks from Services transferred to Production as "baggers." Finally, in 1971, as a result of a conciliation agreement with the Equal Employment Opportunity Commission, all of the jobs in the Services unit were merged into the Production unit and Services was abolished as a separate unit.

The 1971 EEOC conciliation agreement modified in certain respects, the company's then-existing "unit seniority" system. Up until the date of the agreement (October 18, 1971) seniority for the purposes of promotion, transfer, or layoff was governed by the length of service within a particular unit. A reduction in the work force of the Services unit, for example, would take place without regard to the seniority of the Services unit employees as compared with that of employees of the other units; the employees outside Services would not be affected, regardless of whether they had less seniority than those employees to be laid off. The EEOC conciliation agreement un-

---

1. The district court's opinion is reported at 382 F.Supp. 309 (M.D.La.1974).

dertook to modify the use of this unit seniority system, as it pertained to black employees who transferred between units or between job classifications within a unit, by providing that such transferees were to be credited with their total plant seniority for purposes of that transfer, promotion, layoff, vacations, or recall.[2] (The black employees who were formerly in Services were allowed to use their total plant seniority as their unit seniority in the Production unit.) In the absence of a transfer, however, a black employee's seniority, for layoff purposes, continued to be measured by the length of time he or she had been in that particular unit. The collective bargaining agreement executed by the appellee union and the appellee company on October 15, 1973, and which was in effect at the time this suit was instituted, contained seniority provisions parallel to those in the EEOC conciliation agreement.[3]

This suit was originally filed by two black employees, Luttrell B. Cox and Lloyd R. Hinton, and a white employee, Sherwood Cox, all of whom alleged that the discriminatory effects of the seniority system, and in particular its application in the case of layoffs, constituted a violation of their Title VII rights. Luttrell Cox began employment at Allied as a B Operator in the Production unit in September 1967, but on or about October 22, 1971 he was demoted to the position of janitor, as a result of the above-described layoff rules, and resigned for that reason. It was stipulated that at the time of his demotion, there were employees in Maintenance and Stores with less plant seniority. Plaintiff Hinton started work at Allied on December 2, 1968 in the Production unit, and had advanced to the position of A Operator by May 1971. On or about the same date as Luttrell Cox was demoted, Hinton was laid off as a result of the company's unit seniority policy. Plaintiff Sherwood Cox began employment at Allied in the Production unit on January 20, 1966, and at the time of the institution of this suit was still employed as an A Operator in that unit.

The district court denied plaintiffs' motion to maintain the suit as a class action, a

2. The pertinent portions of the conciliation agreement provide as follows:

"IX. AFFECTED CLASS AND SENIORITY"

"A. The Respondents agree that members of the 'Affected Class' shall be those Negro employees previously identified by the Respondent Company as making up the 'Affected Class'. This included those Negro employees working in the predominantly Negro Job Classifications of Baggers, Truck Driver, Leader, Janitor and Laborer, who were hired into these classifications on or before May 2, 1969. A list of such 'Affected Class' employees, by name, department, job, and date of initial hired, is attached hereto as Exhibit No. 1.

"B. The Respondent Company agrees that it will give priority to members of the 'Affected Class' in filling all job vacancies in accordance with Article 9, Section 7, of the current Labor Agreement. Whenever a vacancy exists, the Respondent Company will review the qualifications of 'Affected Class' members and identify those individuals qualified to fill the vacancy. The most senior qualified bidder shall be awarded the job. A qualified individual shall be defined as possessing minimal qualifications or aptitude necessary to perform the job.

"C. All members of the 'Affected Class' who transfer between units shall be credited with *total plant seniority* for purposes of that transfer, promotion, *layoff*, vacations, or recall. (Emphasis added.)

"D. The Respondent Company and Respondent Union represent that a special seniority agreement covering all employees has been negotiated. This new 'Supplemental Agreement' provides that when employees transfer from one unit to another unit or within a unit, they will carry their total plant seniority with them into their new unit or job, as outlined in the Supplemental Agreement. A copy hereto attached and made a part of this Agreement as Exhibit 2."

3. The single major modification made by the collective bargaining agreement was the addition of the following provision:

"C. When any member of the 'Affected Class' is competing with other employees in bidding for a senior operator's job in the Production Unit, the 'Affected Class' employee will not be allowed to utilize his plant seniority until he has completed the progression as an A Operator as stipulated in Appendix I of the current agreement."

The validity of this provision is not at issue on this appeal.

ruling which has not been appealed and which we thus need not consider. The court also dismissed from the suit certain plaintiffs-intervenors whom it had previously admitted as parties, finding their causes of action barred by virtue of their status as signatories to the October 1971 EEOC conciliation agreement containing a clause waiving the charging parties' right to sue either the company or the union in return for those entities' compliance with the provisions of the agreement. On the merits, the district court found that both Luttrell Cox and Lloyd Hinton were qualified for jobs in the Maintenance unit, and that they probably would have transferred into that unit at an early date had it not been for the company's policy of maintaining racially segregated units. Thus, the court concluded, the unit seniority system had discriminated against Luttrell Cox and Hinton, violating their Title VII rights; consequently, the court awarded them both back pay, although refusing to reinstate them or to enjoin the use of the unit seniority system, which it did not find discriminatory *per se*.[4] Finally, the court found that there was no evidence that plaintiff Sherwood Cox's Title VII rights had been violated, and dismissed his claim. Neither Luttrell Cox nor Lloyd Hinton, the successful plaintiffs, has appealed from the district court's failure to enjoin the unit seniority system as modified by the conciliation agreement. Plaintiffs-intervenors Anthony White and Henry Clark, however, have appealed both from the district court's dismissal of them from the case and from its refusal to enjoin the use of the modified unit seniority system. Sherwood Cox has appealed the district court's dismissal of his claim on the merits. We deal with these issues seriatim.

**4.** An examination of the timing involved in Cox's and Hinton's demotion and layoff, respectively, is important to an understanding of their success in bringing their suits as compared to the district court's finding that the unit seniority system, as modified by the EEOC conciliation agreement and new collective bargaining agreement, was not itself violative of Title VII. It was stipulated that both Cox and

## I. The Effect of the Conciliation Agreement.

In its order of December 12, 1973, dismissing the complaints of intervenors Henry Clark and Anthony White, the district court held that as signatories to the October 18, 1971 EEOC conciliation agreement, they were barred from intervention in this case. Part II(C) of the conciliation agreement provides as follows:

"The Charging Parties hereby waive, release, and covenant not to sue Respondent Company and/or Respondent Union with respect to any matters which were or might have been alleged as charges filed with the Equal Employment Opportunity Commission, subject to performance by the Respondents of the promises and representations contained herein. The Commission shall determine whether the Respondents have complied with the terms of this Agreement."

Appellants contended below, and renew their contention here, that neither of them "understandingly and knowingly" waived his right to sue, and argue that the district court should have conducted a hearing on this voluntariness issue. In light of recent decisions by both the Supreme Court and this Court, we agree.

In *Alexander v. Gardner-Denver*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Supreme Court considered and rejected an argument that the petitioner's voluntary submission of an employment discrimination grievance to arbitration, pursuant to the terms of a collective bargaining agreement, constituted a binding waiver of his rights under Title VII. In a footnote to the statement that "presumably an employee may waive his cause of action under Title VII as part of a voluntary settlement," the Court added the following caveat:

Hinton were demoted and laid off within a day or two after the EEOC conciliation agreement went into effect and the collective bargaining agreement was modified to parallel its provisions; this was scarcely enough time for either plaintiff to have transferred into the Maintenance unit, a move for which each was found to be qualified by the court.

"In this case petitioner and respondent did not enter into a voluntary settlement expressly conditioned on a waiver of petitioner's cause of action under Title VII. *In determining the effectiveness of any such waiver, a court would have to determine at the outset that the employee's consent to the settlement was voluntary and knowing.*"

415 U.S. at 52 n. 15, 94 S.Ct. at 1021. (Emphasis added.) More recently, this Court found insufficient to establish a knowing, voluntary relinquishment of Title VII rights the mere signature of an employee on a waiver form referring to changes in advancement procedures agreed upon by the company and the labor union in a Memorandum of Understanding:

"The plaintiffs' theory is that the forms were *signed* without understanding. To assume that, notwithstanding strong evidence to the contrary, a signature implies understanding is to allow a rule of contract law to play too salient a part in the administration of a remedial civil rights statute. *Cf. Alexander v. Gardner-Denver Co.* [citations omitted] . . . . A waiver of a federal remedial remedy is not to be lightly inferred, and the issue must be looked at in the context of the racial discrimination which, for most of its existence, has characterized the mill's operation."

*Watkins v. Scott Paper Co.,* 530 F.2d 1159, 1172–73 (5th Cir. 1975). In light of this recently-expressed deep concern over the necessity for establishing voluntariness before finding an effective waiver of a plaintiff's Title VII rights, we hold that the district court erred in dismissing the complaints in intervention of Clark and White without first holding a hearing to deter-

mine whether in fact they comprehended the rights they were relinquishing when they signed the October 1971 EEOC conciliation agreement.[5]

In view of our disposition of this issue, appellants-intervenors' argument concerning the district court's failure to enjoin the use of the modified unit seniority system is not before us at this time. The district court should consider that issue if it determines, upon remand, and conducting a hearing, that the intervenors did not knowingly and voluntarily waive their rights by signing the conciliation agreement so that it does not constitute a bar to their suit.

## II. *The Dismissal of Appellant Sherwood Cox's Claim.*

██ Finally, we consider the contention of appellant Sherwood Cox that the district court erred in dismissing his Title VII suit. As stated before, appellant Cox is a white employee of Allied, currently serving as an A Operator in the Production unit; he has never sought transfer out of that unit and the district court found that there was insufficient evidence to show that he is in fact qualified to work in Maintenance. He has alleged only that the seniority system injures him because he is "immediately faced with a layoff in the foreseeable future whereas members in the maintenance department are being retained . . . in their employment with up to probably half of the seniority that he has."

While it is now clear that white persons can have a cause of action for employment discrimination under Title VII, *see McDonald v. Sante Fe Trail Transportation Co.,* —— U.S. ——, 96 S.Ct. 2574, 49 L.Ed.2d —— (1976), it is nevertheless clear

---

**5.** From the record before us, it is clear that the district court was aware of the precise nature of the intervenors' arguments concerning the voluntariness of their status as signatories to the agreement, and it is also clear from reading the affidavit of Anthony White that there was at least some evidence before the court, at the time it ruled on defendants' motion to dismiss the complaints in intervention, that the waivers were signed with less than full knowledge of the bargain that was being struck, as may be

seen in White's answer to the following question about whether the lawyer advising the employees who were signatories to the agreement had explained the agreement to them:

"Q. Did Mr. Lange explain it to you?
A. Oh, yes. Well, he said—well, I figured he was doing the right thing and everything, the way—the way he was talking he though it was for the good of us, you know. From what he said and everything, well, we went—right along with him."

from the facts as found by the district court that appellant Cox has not even alleged that he was discriminated against *because of his race*, a prerequisite for a Title VII action. Hence, regardless of the merits of the modified unit seniority system still being utilized by appellee Allied Chemical, the district court did not err in dismissing his claims on the merits.

The judgment of the district court is accordingly AFFIRMED in part, REVERSED in part, and the case REMANDED for further proceedings not inconsistent with this opinion.