EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

UNITED STATES STEEL CORPORATION, Defendant.

Civ. A. No. 84–702.

United States District Court,
W.D. Pennsylvania.

April 6, 1984.

Reginald L. Sydnor, Carmen R. Matos, E.E.O.C., Philadelphia, Pa., for plaintiff.

Richard J. Antonelli, U.S. Steel Corp., Pittsburgh, Pa., for defendant.

## OPINION

MANSMANN, District Judge.

This matter comes before the Court on Plaintiff's Motion for Preliminary Injunction. After careful consideration of the evidence presented at the hearing on Plaintiff's Motion and the oral arguments made by counsel at that time, as well as the briefs submitted by the parties in support of their respective positions, this Court concludes that a preliminary injunction should issue. Accordingly, Plaintiff's Motion for Preliminary Injunction is granted.

\*　　\*　　\*　　\*　　\*　　\*

## FINDINGS OF FACT

To the extent that any conclusions of law may also be considered findings of fact, they are hereby incorporated into our findings of fact.

Plaintiff Equal Employment Opportunity Commission ("EEOC") is an agency of the United States of America charged with the administration, interpretation and enforcement of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.* The EEOC is authorized to bring this action by section 7 of the ADEA, 29 U.S.C. § 626.

Defendant United States Steel Corporation ("U.S. Steel") is a Delaware corporation which does business in the Commonwealth of Pennsylvania and specifically does business in the Western District of Pennsylvania. U.S. Steel is engaged in, *inter alia,* the manufacture of steel and steel products.

At all times relevant hereto, Defendant has employed more than 20 employees and is an employer engaged in an industry affecting commerce within the meaning of section 11(b), (g) and (h) of the ADEA, 29 U.S.C. § 630(b), (g) and (h).

This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345. The Court has jurisdiction to grant the relief requested pursuant to section 7(b) of the ADEA, 29 U.S.C. § 626(b), incorporating sections 16 and 17 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216 and 217.

The EEOC brought this action alleging that Defendant was and is willfully engaging in employment practices which violate section 4(d) of the ADEA, 29 U.S.C. § 623(d), by requiring employees to sign a release of rights under the ADEA in order to obtain a "70/80" retirement pension.

The EEOC, simultaneously with the Complaint, requested a Temporary Restraining Order, contending that U.S. Steel's use and enforcement of the release was causing irreparable harm to the EEOC's investigative and administrative processes. Based upon the evidence presented at that time, this Court issued a Temporary Restraining Order, restraining U.S. Steel from enforcing certain portions of the release and also restraining U.S. Steel from terminating the 70/80 retire-

ment pension with respect to certain individuals.

The parties are asserting essentially the same or similar contentions on the Motion for Preliminary Injunction now before us. Additional evidence, oral argument and legal memoranda have been presented for our consideration.

We find that U.S. Steel has, in fact, required certain individuals to sign a form called the "PF–116–B" as a prerequisite to obtaining a retirement pension known as the "70/80" retirement pension.

The PF–116–B contains a release or waiver of all claims and causes of action under, *inter alia,* the ADEA. The PF–116–B also expressly sets forth a promise by the signatory: (1) not to file or permit to be filed on his or her behalf any claim under the ADEA, (2) not to counsel or assist in the prosecution of such claims and (3) to withdraw any such claim filed by the signatory or by others on his or her behalf and to refuse to participate in any such claim.

The PF–116–B was implemented by U.S. Steel in October 1982. The release and waiver contained therein were not required before that time in order to obtain a 70/80 retirement pension.

Many of the individuals who were given the PF–116–B to sign were laid off or retired from jobs at U.S. Steel's Clairton Works in 1982 and 1983. In fact, of the former U.S. Steel employees who testified at the hearing before this Court, only one had not been employed at the Clairton Works at the time of his retirement.

A number of these laid off or retired individuals had filed charges with the EEOC concerning their layoffs or retirements before they were given the PF–116–B to sign. At least some, however, had not filed EEOC charges nor filed or joined any lawsuits against U.S. Steel at the time they signed the PF–116–B.

All nine of the former U.S. Steel employees who testified at the hearing had signed the PF–116–B. Five, and possibly six, of those individuals had previously filed charges with the EEOC and one of them had also filed an action in federal district court. Three individuals had not filed any charges nor joined any lawsuits at the time they signed the PF–116–B and indeed, they have not done so to date.

Only with respect to one individual did the evidence adduced at the hearing strongly suggest that execution of the PF–116–B was part and parcel of a settlement or compromise of a claim. Moreover, even in that case, the former employee disagrees with U.S. Steel's contention that the settlement encompassed both his federal court action and a second charge he filed with the EEOC. Rather, he asserts that the settlement resolved only his court action which was based upon an earlier EEOC charge and did not resolve the second EEOC charge.

With respect to the other former employees who testified at the hearing, there is no evidence, other than the timing of the execution of the PF–116–B, that the PF–116–B and the release and waiver contained therein were part of a settlement or compromise of a legal claim. Indeed, three witnesses had not asserted any legal claims prior to signing the PF–116–B. We note with regard to all eight of these individuals, that the record is devoid of any evidence of the negotiations which usually precede a settlement. There was also no evidence that negotiations had taken place with respect to others who did not testify.

Furthermore, the evidence indicated that only one of the nine former employees who testified had been represented by counsel with respect to the execution of the PF–116–B. There is no evidence that the others who testified or that others who did not testify were represented by counsel.

Indeed, there is no evidence that the EEOC was even involved in the purported "settlements" although some employees had EEOC charges pending at the time.

Thus, with one exception, we conclude that the execution of PF–116–B, and the release and waiver of ADEA claims and

rights contained therein, were not part of a settlement or compromise of a legal claim.

Assuming *arguendo* that the former U.S. Steel employees who signed the PF–116–B did so as part of a settlement, we find that the employees' consents to the alleged "settlements" were not voluntary and knowing.

In this regard, we again note that, with one exception, none of the employees were represented by counsel nor is there any evidence that negotiations took place over the proposed "settlements." Given the evidence offered thus far, U.S. Steel could hardly contend that the terms of the alleged "settlements," and even more specifically, the language of the PF–116–B, were the products of negotiations between U.S. Steel and its laid off or retired employees. In every case except one, U.S. Steel simply presented the printed form for the employee's signature.

Furthermore, while the evidence suggests that, in many instances, U.S. Steel explained the 70/80 retirement pension to its employees, there is no evidence that U.S. Steel explained the language of the waiver and release form and the consequences flowing therefrom. Again, the evidence shows that the employees were simply handed the printed form containing at least four paragraphs of "legalese" and told that they must sign it in order to receive the 70/80 pension. At least one employee testified that no explanation of the form was provided to him or to others who received it with him. In some cases, the employees were merely told to "read it carefully." We also note that several employees testified that no other options were mentioned to them.

Moreover, the language of the release cannot be considered free from ambiguity. In this regard, the testimony adduced at the hearing indicated that U.S. Steel places a different interpretation on certain language in the PF–116–B than that drawn by the EEOC and the former U.S. Steel employees. For example, U.S. Steel alleges that the release does not preclude a signatory from talking to the EEOC or from testifying in court. Rather, according to U.S. Steel, the release only precludes the filing of EEOC charges and the filing of or joining in any lawsuits. The EEOC and the former U.S. Steel employees construe the language of the release much more broadly so as to foreclose giving any assistance to the EEOC, even with regard to charges filed on behalf of others.

We find that the language of the release is far from clear. It does support different interpretations although, we also note, the language favors the interpretation given by the EEOC and the employees.

In light of all the factors discussed above, namely, lack of negotiations, absence of counsel, lack of explanation with respect to the release and the ambiguity in the language of the release, we hold that the employees' consents to the alleged "settlements" were not voluntary and knowing even assuming that the facts could support the existence of "settlements."

At least one former U.S. Steel employee has refused to assist in the investigation of his EEOC charge because of form PF–116–B. Specifically, that employee has refused to give an affidavit or otherwise discuss the matter with the EEOC because he signed the release. This employee had attempted to withdraw his charge after signing the PF–116–B but the EEOC would not approve the withdrawal because the employee crossed out the printed statement that he was not coerced, thereby indicating that he was not acting voluntarily.

At least one other employee, and possibly another, also requested to withdraw EEOC charges after signing the form.

Several employees testified that they wanted to file EEOC charges or at least considered doing so but refrained from filing because of the release they had signed.

Several employees also expressed apprehension and fear in testifying at the hearing on this Motion because they had previously signed the form.

A third employee stated that he had no concerns about testifying at the hearing but only because the Temporary Restrain-

ing Order, previously issued by this Court, was in effect at that time.

We believe that the facts outlined above adequately support a finding that the use and enforcement of PF–116–B will cause irreparable harm to the EEOC for which the EEOC cannot be adequately recompensed in an action at law for damages. In this regard, U.S. Steel's use of PF–116–B has hindered and impeded the EEOC's investigative and administrative processes by having a "chilling" effect on those who have filed charges as well as on those who have not and will continue to do so unless an injunction is issued.

Thus, the EEOC has adduced sufficient facts to show a reasonable likelihood of eventual success on the merits and a reasonable probability of irreparable injury if the relief it requests is not granted.

The facts also show a possibility of harm to other interested persons, namely, the former U.S. Steel employees, if the preliminary injunction is denied. Thus, it is possible that the 70/80 retirement pension could be terminated with respect to any laid off or retired employee who files a charge or joins a lawsuit or who otherwise counsels or assists in the prosecution of charges or lawsuits, whether filed on behalf of themselves or on behalf of others. We further find that the harm to the employees and to the EEOC if the injunction is denied outweighs the harm to U.S. Steel if the injunction is granted.

Finally, issuance of an injunction would protect the public interest in maintaining and promoting the EEOC's ability to investigate and process charges of age discrimination.

\* \* \* \* \* \*

## CONCLUSIONS OF LAW

To the extent that any findings of fact may also be considered conclusions of law, they are hereby incorporated into our conclusions of law.

█ A preliminary injunction is not granted as a matter of right. *Kershner v. Mazurkiewicz,* 670 F.2d 440, 443 (3d Cir. 1982) (en banc). Its grant or denial is committed to the sound discretion of the trial court who must consider several factors in reaching a decision. *Id.* In this regard, the moving party must · demonstrate (1) a reasonable likelihood of eventual success on the merits and (2) a reasonable probability of irreparable injury if relief is not granted. *Freixenet, S.A. v. Admiral Wine & Liquor Co.,* 731 F.2d 148, at 151, (3d Cir. March 28, 1984).

The U.S. Court of Appeals for the Third Circuit has clearly indicated that it will not uphold an injunction where the claimed injury only constitutes a loss of money since that is a loss capable of recoupment in a proper action at law. *In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137, 1145 (3d Cir.1982).

Preliminary injunctive relief may not be granted unless both of the above requirements are satisfied. *Id.* at 1143. When relevant, the trial court should also consider (3) the possibility of harm to other interested persons from the grant or denial of the injunction and (4) the public interest. *Id.* *See also Oburn v. Shapp,* 521 F.2d 142, 147 (3d Cir.1975).

There is a dearth of ADEA case law on the legal issues before us. Nevertheless, cases decided under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* are instructive by way of analogy.

█ It is clear that there can be no prospective waiver of an employee's rights under Title VII. *Alexander v. Gardner-Denver,* 415 U.S. 36, 51, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974). An employee, however, may waive his cause of action under Title VII as part of a voluntary settlement. *Id.* at 52 n. 15, 94 S.Ct. at 1021 n. 15. In determining the effectiveness of any such waiver, a court must determine at the outset that the employee's consent to the settlement was voluntary and knowing. *Id.* Thus, a waiver of a federal remedial right is not to be lightly inferred. *Lyght v. Ford Motor Co.,* 643 F.2d 435, 441 (6th Cir.1981); *Watkins v. Scott Paper Co.,* 530

F.2d 1159, 1172 (5th Cir.1976), *cert. denied,* 429 U.S. 861, 97 S.Ct. 163, 50 L.Ed.2d 139 (1976).

In most cases where a release or waiver of Title VII rights has been part of a settlement, a legal claim or claims has first been asserted, either by way of EEOC charges or actions in court or both. *See, e.g., Pilon v. University of Minn.,* 710 F.2d 466 (8th Cir.1983); *Cox v. Allied Chemical Corp.,* 538 F.2d 1094 (5th Cir.1976), *cert. denied,* 434 U.S. 1051, 98 S.Ct. 903, 54 L.Ed.2d 804 (1978); *United States v. Allegheny-Ludlum Indus., Inc.,* 517 F.2d 826 (5th Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). In this regard, "a release is not a device to exempt from liability but is a means of compromising a *claimed* liability ... (emphasis added)." 517 F.2d at 861, quoting *Callen v. Pennsylvania R.R.,* 332 U.S. 625, 631, 68 S.Ct. 296, 298, 92 L.Ed. 242 (1948).

Furthermore, settlements in these cases are usually characterized by negotiations between the parties. *See, e.g. Odomes v. Nucare, Inc.,* 653 F.2d 246 (6th Cir.1981); *Strozier v. General Motors Corp.,* 635 F.2d 424 (5th Cir.1981); *United States v. Allegheny-Ludlum Indus., Inc., supra.*

Moreover, settlements in these matters are generally negotiated by counsel on behalf of the employees rather than by the employees themselves. *See, e.g., Pilon v. University of Minn., supra; Odomes v. Nucare, Inc., supra; Strozier v. General Motors Corp., supra.*

Given the case law, we conclude that the execution of the release, with one exception, was not part of the settlement or compromise of a claim.

■ We respectfully disagree with the position taken on this issue by the court in a case cited by U.S. Steel, *Runyan v. NCR Corp.,* 573 F.Supp. 1454 (S.D.Ohio 1983), to the extent it differs from the position taken here. We do so only after carefully examining the authorities cited by that court and concluding that the cited authorities lend greater support to our own position.

Assuming *arguendo* that the former U.S. Steel employees who signed the release did so as part of a settlement, the factors considered significant by the relevant case law, as set forth below, compel us to conclude that the employees' consents to the alleged "settlements" in this case were not voluntary and knowing.

■ The mere signature of an employee on a waiver form is insufficient to establish a knowing, voluntary relinquishment of Title VII rights. *Cox v. Allied Chemical Corp., supra* at 1098. The mere existence of an express waiver is, of itself, insufficient to show actual waiver. *Watkins v. Scott Paper Co., supra* at 1173 n. 19.

Courts have found a voluntary and knowing consent where the employee was represented by counsel throughout the settlement. *See, e.g., Pilon v. University of Minn., supra; Strozier v. General Motors Corp., supra.*

Courts, in finding a voluntary and knowing consent, have also considered it important that the terms of the settlement and even more specifically, the language of the release, were negotiated by the parties. *See, e.g., Pilon v. University of Minn., supra.*

When finding that consent was not voluntary and knowing, the courts have emphasized that the employee was not represented by counsel and did not engage in any settlement negotiations. *See, e.g., Lyght v. Ford Motor Co., supra.* Even where counsel has still negotiated on behalf of employees, at least one court has questioned whether the employees' consent was voluntary and knowing where it was not clear that the lawyer advising the employees fully explained the terms of the settlement agreement and the waiver of their Title VII rights to them. *See Cox v. Allied Chemical Corp., supra* at 1098 n. 5 (on remand, district court must conduct a hearing to determine if employees gave their consent voluntarily and knowingly).

At least one court has considered whether the language of the release is clear in addition to considering the factors dis-

cussed above. *See, e.g., Pilon v. University of Minn., supra.*

Another court emphasized that, under the terms of the proposed settlement agreements and consent decrees, several company-union committees would furnish affected employees with comprehensive, relevant information concerning their rights under the proposed settlements before any releases would be signed. *United States v. Allegheny-Ludlum Indus., Inc., supra.* "Such information is calculated to insure that each electing employee settles knowingly and voluntarily...." *Id.* at 856.

A review of the evidence before us in light of the pertinent factors above leads us to conclude that, with one exception, the employees' consents in this case were not voluntary and knowing even assuming the PF-116-B was part of a settlement. That evidence, as it pertains to these factors, is set forth in our findings of fact. We shall not set forth those findings again here.

U.S. Steel relies heavily upon *Runyan v. NCR Corp., supra.* That case, however, is easily distinguishable from the case before us on the questions of consent and waiver. In *Runyan,* the terminated employee was "an experienced labor lawyer who admittedly was aware of the ADEA, and presumably had the ability to research, discuss and resolve any questions or uncertainties he might have concerning the effect of the release he signed." *Id.* at 1464. Further, the court's recitation of the facts in that case indicate that negotiations did precede the settlement agreement even though Attorney Runyan was apparently not represented by another lawyer in these discussions. *See id.* at 1456.

Therefore, *Runyan* does not alter our conclusion that the consents to the alleged "settlements" in the instant case were not voluntary and knowing.

■ A plaintiff must establish irreparable injury as a prerequisite to the receipt of injunctive relief even in Title VII cases. *Moteles v. University of Pa.,* 730 F.2d 913 at 919–920, (3d Cir. 1984). Hence, irreparable harm cannot be presumed merely from

a violation of Title VII or, we believe, from a violation of the ADEA. *See id.* The Court of Appeals for the Third Circuit implied in dicta that it might join the Court of Appeals for the Ninth Circuit in relaxing the standard of injury when the EEOC, rather than a private party, seeks injunctive relief. *See id.*

■ Regardless, the EEOC can establish irreparable harm by showing that in fact its ability to investigate and prosecute has been impeded through a "chilling" effect caused by an employer's alleged wrongful act or conduct. *See EEOC v. Anchor Hocking Corp.,* 666 F.2d 1037, 1043 (6th Cir.1981). We have already found that the EEOC has factually made such a showing, thereby establishing the irreparable injury that is a prerequisite to injunctive relief.

We have also already found that the evidence shows a possibility of harm to other interested persons, namely, the former U.S. Steel employees, if the preliminary injunction is denied. We further found that the harm to the employees and to the EEOC if the injunction is denied outweighs the harm to U.S. Steel if the injunction is granted.

Finally, the ADEA and Title VII as well as the cases decided thereunder indicate that the public has an interest in maintaining and promoting the EEOC's ability to investigate charges of employment discrimination. *See generally EEOC v. Shell Oil Co.,* No. 82–825, slip op., —— U.S. ——, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984) ("it is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired"). The issuance of an injunction would protect this public interest.

In light of the above, this Court concludes that a preliminary injunction should issue. Accordingly, Plaintiff's Motion for Preliminary Injunction is granted.