Robert K. MYERS, Plaintiff–Appellant,

v.

WESTERN–SOUTHERN LIFE INSUR-
ANCE COMPANY, an Ohio
Corporation, Defendant–Appellee.

No. 87–1562.

United States Court of Appeals,
Sixth Circuit.

Argued March 28, 1988.

Decided June 20, 1988.

Beth M. Rivers, Timothy G. Hagan (argued), Donelly, Huizenga, Wahl and Ha-

gan, P.C., Detroit, Mich., for plaintiff-appellant.

Sally L. Geib, Miller, Canfield, Paddock, and Stone, Detroit, Mich., Allyn Koutor (argued), for defendant-appellee.

Before KEITH, MARTIN and NELSON, Circuit Judges.

KEITH, Circuit Judge.

Plaintiff, Robert K. Myers, appeals from the grant of summary judgment for defendant, Western–Southern Life Insurance Company ("Western") in this action filed under the Elliott–Larsen Civil Rights Act, Mich.Comp.Laws Ann. § 37.2101 *et seq.* (1977) and the Michigan Handicappers' Civil Rights Act, MCLA § 37.1101 *et seq.* For the following reasons, we AFFIRM.

## I.

The facts of this case are not complicated. Myers began working for Western in 1950. His employment relationship with Western was governed by a series of written employment contracts. Section III(c) of the last contract, dated July 1, 1985, provided that:

Section III. Legal Proceedings
You agree:

\* \* \* \* \* \*

c. Not to commence any action or suit relating to your employment with Western–Southern more than six months after the date of termination of such employment, and to waive any statute of limitation to the contrary.

\* \* \* \* \* \*

Similar provisions were in all of his employment contracts signed since 1950.

Myers went on a stress-related disability leave in November, 1982. When he returned to work in December, 1983, Myers was demoted from Associate Manager to the position of Sales Agent. Myers retired from Western on June 10, 1985, effective August 1, 1985. Three weeks after he notified Western of his retirement, on July 1, 1985, Myers signed the employment con-

tract which contained the limitation clause at issue here.

Myers filed this suit in Wayne County Circuit Court on December 10, 1986, over sixteen months after the date of his termination, alleging constructive discharge as the result of his age and handicap (nervous trauma). Western removed the case based on diversity of citizenship, 28 U.S.C. §§ 1332, 1441, and moved for summary judgment based on the six-month limitations clause. An order granting Western's motion for summary judgment was entered on May 26, 1987.

## II.

On appeal, Myers' primary argument is that the six-month limitations provision in his employment contract with Western–Southern is void as against public policy when applied to his civil rights claims.

Initially, we note that, as a general matter, Michigan courts have upheld provisions in private contracts limiting the time within which a suit must be brought, even though the period specified is less than the applicable statute of limitations, as long as the contractual limitation is reasonable. *Camelot Excavating Co., Inc. v. St. Paul Fire & Marine Insurance Co.*, 410 Mich. 118, 126, 301 N.W.2d 275, 277 (1981); *The Tom Thomas Organization, Inc. v. Reliance Insurance Co.*, 396 Mich. 588, 592, 242 N.W. 2d 396, 397 (1976). Myers, however, argues that public policy, as voiced by the Michigan Legislature and the Congress in providing administrative mechanisms which either require a waiting period before the right to sue accrues or which, by their very nature, require more than six months to reach a resolution, mandates that the contractual provision in the case *sub judice* not be enforced.

In *Mahoney v. Lincoln Brick Co.*, 304 Mich. 694, 8 N.W.2d 883 (1943), the Michigan Supreme Court set forth its test for determining whether a contractual provision is against public policy and therefore void under Michigan law:

In 12 Am.Jur. § 167, p. 664,[1] it is stated:

---

1. The current text is found at 17 Am.Jur.2d, Contracts, § 179, p. 541–43.

'The question whether a contract is against public policy depends upon its purpose and tendency, and not upon the fact that no harm results from it. In other words, all agreements the purpose of which is to create a situation which tends to operate to the detriment of the public interest are against public policy and void, whether in the particular case the purpose of the agreement is or is not effectuated. For a particular undertaking to be against public policy actual injury need not be shown; it is enough if the potentialities for harm are present.'

\* \* \* \* \* \*

■ In 17 C.J.S. § 211, pp. 563–565, it is stated:

"Contracts contrary to public policy, that is those which tend to be injurious to the public or against the public good, are illegal and void, even though actual injury does not result therefrom. This rule is applied in both State and Federal courts, in cases arising in law and in equity, to contracts involving numerous and steadily increasing types of subject matter, regardless of the character of the contracting parties."

\* \* \* \* \* \*

*"The test to be applied is not what is actually done, but that which may or might be done under the terms of the contract; it is the evil tendency of the contract and not its actual injury to the public in a particular instance. The law looks to the general tendency of such agreements, and it closes the door to temptation by refusing them recognition in any of its courts."*

304 Mich. at 705–07, 8 N.W.2d at 887–88 (emphasis in original). Thus, under this "so-called broad rule," *Federoff v. Ewing*, 386 Mich. 474, 480, 192 N.W.2d 242, 245 (1971), Myers need only show that the purpose of the contract provision is to create a situation which tends to operate to the detriment of the public interest; he need not demonstrate that the public interest has actually been harmed. 386 Mich. at 480–81, 192 N.W.2d at 245–46; *Mahoney*, 304 Mich. at 705–07, 8 N.W.2d at 887–88. How-

ever, we conclude that, under Michigan law, Myers cannot make such a showing.

We are guided in this assessment by the treatment that Michigan courts have given to administrative remedies, both state and federal, as they affect the codified statute of limitations for civil rights actions. Under Michigan law, the pursuit of relief through an administrative proceeding does not toll the statute of limitations. *Mair v. Consumers Power Company*, 419 Mich. 74, 348 N.W.2d 256 (1984) (plaintiff filed a charge with the EEOC, then a civil action pursuant to § 202(1) of the Michigan Civil Rights Act, Mich.Comp.Laws Ann. § 37.2101 *et seq.*); *Barczak v. Rockwell International Corporation*, 68 Mich.App. 759, 244 N.W.2d 24 (1976) (plaintiff filed an administrative action with the Michigan Civil Rights Commission, then a civil action pursuant to the Michigan State Fair Employment Practices Act, Mich.Comp.Laws Ann. § 423.301 *et seq.* (1985); and the Equal Pay Act, § 750.556 (1985)). If Michigan does not permit the tolling of the codified statute of limitations upon the filing of an administrative action, we cannot say that, under Michigan law, public policy dictates that a privately negotiated limitations period be voided because of the existence of administrative schemes.

■ Myers argues that, because his is a civil rights action, a higher level of scrutiny ought to be applied. We note, however, that the heightened scrutiny which is applied to civil rights cases in this context involves the knowing and voluntary nature of the waiver of civil rights claims. *E.g., Alexander v. Gardner–Denver*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Cox v. Allied Chemical Corp.*, 538 F.2d 1094 (6th Cir.1976), *cert. denied*, 434 U.S. 1051, 98 S.Ct. 903, 54 L.Ed.2d 804 (1978). As to the effect of limitations periods on civil rights actions generally, *Barczak* again is, by analogy, instructive:

Plaintiff contends that even if, as a general rule, a lawsuit must be involved in order to toll the running of the limitations period, special considerations attach when a civil rights action is involved. She argues that the ordinary tolling

rules must give way to the preeminent public policy of this state to protect its citizens against discrimination on the basis of sex. We agree that the policy of enforcing an individual's civil rights is to be given "highest priority," but we hold that the same tolling provisions apply regardless of the nature of the cause of action.

68 Mich.App. at 763, 244 N.W.2d at 25–26. Thus, in order to benefit from the heightened scrutiny afforded civil rights actions, Myers would be required to demonstrate that his waiver of the statute of limitations was not knowing and voluntary. It is to this contention that we now turn.

### III.

Myers argues that civil rights claims cannot be restricted or limited without a knowing and intelligent waiver by the allegedly aggrieved party, and that no such waiver was obtained here. Although waivers in civil rights cases ought to be carefully scrutinized for voluntariness, *see Cox*, 538 F.2d at 1098 (waiver of Title VII rights), it does appear that the waiver in this case was knowing and voluntary. The contractual language is quite clear; moreover, if Myers believed that the terms were unreasonable, he clearly had the option of not signing the agreement. *Perez v. Western–Southern Life Ins. Co.*, 43 Fair Empl. Prac.Cas. (BNA) 1811, 1812 (E.D.Mich. 1987) (identical clause) [available on WESTLAW, 1987 WL 16355]. Indeed, the only evidence of compulsion is Myer's conclusionary affidavit to that effect. Under these circumstances, we cannot say that the waiver of the applicable statute of limitations was unknowing or unintelligent.

### IV.

As discussed in Section II, *supra*, a contractual limitation period must be reasonable if it is to be enforced in the face of a longer statutory period. *Camelot*, 410 Mich. at 126, 301 N.W.2d at 277. In *Camelot*, the Michigan Supreme Court defined reasonableness in this context as follows:

> The boundaries of what is reasonable under the general rule require that the claimant have sufficient opportunity to investigate and file an action, that the time not be so short as to work a practical abrogation of the right of action, and that the action not be barred before the loss or damage can be ascertained.

410 Mich. at 127, 301 N.W.2d at 277 (citations omitted).

There is nothing inherently unreasonable about a six-month limitations period. For example, six months is the time limit within which claims must be brought for breach of the duty of fair representation under the Labor Management Relations Act. 29 U.S.C. § 160(b); *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). We cannot say that, under the *Camelot* criteria, the six-month limitation in this case is less reasonable than that applied to fair representation claims. *See Perez*, 43 Fair Empl.Prac.Cas. (BNA) at 1811 n. 1 [available on WESTLAW, 1987 WL 16355].

### V.

Accordingly, for the foregoing reasons, the judgment of the district court, the Honorable John Feikens, Eastern District of Michigan, is AFFIRMED.