**James WINEMAN and Sally Wineman, Plaintiffs/Counter–Defendants,**

v.

**DURKEE LAKES HUNTING & FISHING CLUB, INCORPORATED, Defendant/Counter–Plaintiffs.**

No. 04–10206–BC.

United States District Court, E.D. Michigan, Northern Division.

Jan. 13, 2005.

---

Roger L. Myers, Howard & Howard (Ann Arbor), Ann Arbor, MI, for Plaintiffs.

Edward B. Davison, Gault Davison, Flint, MI, for Defendant/Counter Claimant.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LAWSON, District Judge.

The plaintiffs were employed as live-in caretakers of property that the defendant operated as a hunting and fishing club. After their employment was terminated, they filed this action claiming that the defendant did not pay premium overtime wages required by law and also failed to pay other benefits according to their employment agreement. The defendant has filed a motion for summary judgment al-

leging that some or all of the plaintiffs' claims based on state contract law and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, are time-barred due to the operation of a contractually-shortened period of limitations. The plaintiffs filed an answer in opposition to the motion, and the Court heard the parties' arguments in open court on December 15, 2004. The Court finds that clear policy announced by the Supreme Court prevents an agreement to shorten the statute of limitations for FLSA claims; however no such prohibition exists with respect to the state-law contract claims. Further, the claims that arose from the parties' relationship that continued beyond the expiration of the written contract that contained the shortened limitations period are not affected by that contract term and have been filed timely. Therefore, the Court will grant in part and deny in part the defendant's motion for summary judgment.

## I.

On June 22, 2001, plaintiffs James and Sally Wineman entered into an employment contract with the defendant, Durkee Lakes Hunting & Fishing Club, to work as caretakers and cooks. Initially, the plaintiffs were to work for the defendant from June 22, 2001 until December 31, 2001. The contract, however, provided for a renewal of employment for a successive one-year term upon mutual agreement of the parties. The third paragraph of the contract outlined the plaintiffs' respective duties:

3. *DUTIES OF EMPLOYEES*

3.1 *General Duties:* Employees shall be employed in an executive capacity with primary responsibilities of caretaker and cook. Employees agree that they will not furnish the same or similar services to any person or entities other than the Employer.

3.2 *Specific Duties:* In addition to the general duties of the employees set forth in Paragraph 3.1 of this Agreement, Employees shall have the following specific obligations:

(a) See Attachment No. 1

(b) Such other duties as may be assigned from time to time by the President of the Employer.

Def.'s Mot. Summ. J. Ex. A, Employment Agreement at ¶ 3. Attachment No. 1 provides:

A. Provided [sic]/arrange maintenance and repair requirements of the Company
   1. Equipment
   2. Buildings and structures
   3. Docks and raft
   4. Fences
   5. Firewood supply at lodge and cabins as much as a two (2) year stockpile

B. Provide/arrange for, prepare and serve meals for members and guests*

C. Provide/arrange for cleaning of cabins and lodge*

D. Provide/arrange cabin, lodge and meal reservations*

E. Provide bookkeeping responsibilities as assigned by Treasurer

F. Authority to hire and release part-time employees*

*As provided by Company policies

Def.'s Mot. Summ. J. Ex. A, Attachment No. 1.

For their work, the plaintiffs received an annual salary of $25,000 paid in installments every other week. In addition, the plaintiffs were entitled to use the company vehicle, lodging at no rent, meals from the company's supplies, utilities at company expense, gasoline from the company's supply, reimbursement of personal automobile expenses at twenty-five cents per mile, and erect two deer hunting blinds for personal use subject to the company president's

approval. The contract also provided for two weeks of personal and vacation leave. This leave time, however, was subject to prior notice and required to be taken "at such a time and manner as shall be mutually satisfactory to the Employer and Employees but subject always to the demands of the practice as determined by the Employer, provided, however, that the Employees shall schedule vacation time during the month of April and/or the first two (2) weeks of May." Def.'s Mot. Summ. J. Ex. A, Employment Agreement at ¶ 4.2.

Paragraph six of the employment contract governed the termination of the employment agreement and stated that, upon thirty days written notice, either party could, with or without cause, end the employment relationship. In the event of the plaintiffs' death or disability lasting for a period in excess of six weeks, the plaintiffs' employment would automatically terminate. Clause six of the employment contract contained provisions for arbitration, choice of law, and the time frame for bringing lawsuits. It stated:

> 6. *Arbitration/Limitation.* Any controversy or claim arising out of, or relating to this Agreement, the employment set out herein, or the breach thereof, shall be settled by arbitration in accordance with the rules then in effect of the American Arbitration Association and judgment upon the award may be entered in any court having jurisdiction thereof and shall be initiated by petition to the American Arbitration Association within six (6) months of the event or occurrence complained of or termination of this Agreement.

*Id.* at ¶ 6. Finally, the contract specified that "[n]o amendments or additions to this agreement shall be binding unless in writing and signed by the party to be charged, except as may herein otherwise be provided." *Ibid.*

On January 1, 2002, the parties agreed to a one year extension of the original contract as provided for in paragraph two. The extension states in relevant part:

> A. The Employment Agreement between Durkee Lakes Hunting & Fishing Club, Inc. and James Wineman and Sally Wineman dated June 22, 2001 and effective June 22, 2001, is extended for the term (Paragraph 2) from December 31, 2001 to and including December 31, 2002.

> In all other respects the Employment Agreement is confirmed and re-ratified.

Def.'s Mot. Summ J. Ex. A, First Extension of Employment Agreement. By its terms, this extension expired on December 31, 2002. The plaintiffs, however, continued working for the defendant beyond that period. The plaintiffs claim that after the expiration of the first extension, they entered into a new, verbal contract with the defendant that the parties never reduced to writing. As part of this new contract, the plaintiffs allege, the defendant agreed to provide them with three weeks of paid vacation time.

In its motion for summary judgment, the defendant appended as an exhibit an unsigned document, purportedly a second extension of the original contract, identical to the first extension except for the title and the employment term, which ran through December 31, 2003. *See* Def.'s Mot. Summ J. Ex. A, Second Extension of Employment Agreement. The plaintiffs allege that they did not sign a second extension because it did not reflect the terms the parties had agreed upon verbally. Compl. ¶ 13. In mid-December of 2003, the defendant notified the plaintiffs that their employment would be terminated effective January 15, 2004.

On July 26, 2004, the plaintiffs filed a three-count complaint in this District's Southern Division alleging a violation of

the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and state-law breach of contract. On August 12, 2004, the case was transferred to the Northern Division where both parties reside. In count one, the plaintiffs allege that the defendant willfully failed to pay premium overtime wages and unused vacation time to which the defendant agreed in violation of the FLSA. In count two, the plaintiffs allege that the defendants failed to pay them for three weeks of unused vacation time and reimburse them for damage to and deterioration of their vehicles and equipment as agreed. Finally, in count three, the plaintiffs allege that as a result of this failure to compensate, the plaintiffs have conferred significant benefit on the defendant for which they have not been compensated.

On August 18, 2004, the defendant filed a counter-complaint alleging that the plaintiffs had used a VISA credit card and checking account it issued to them for personal purposes without authority. The defendant further alleged that the plaintiffs submitted false, excessive statements of mileage for reimbursement. The improper use of the credit card and checking account and the submission of false statements, the defendant alleged, constitutes a conversion of its assets and property. On the same day, the defendant also filed a motion for summary judgment arguing that the Court lacks jurisdiction over the case because the plaintiffs filed their lawsuit after the period of limitations agreed upon in the original contract had expired. Despite the contract terms, neither party has invoked the arbitration clause. On September 27, 2004, the plaintiffs filed a response in opposition, and on October 5, 2004, the defendant filed a reply to the plaintiff's response.

## II.

The defendant has titled its motion as one for summary judgment, but cites Federal Rule of Civil Procedure 12(b) as its

authority and makes no reference to the summary judgment rule, Rule 56. However, the later rule is the one that applies, as the plaintiffs have acknowledged, because the parties have asked the Court to consider matters outside the pleadings in deciding the motion. See Fed.R.Civ.P. 12(b) (stating that "[i]f ... matters outside the pleading are presented to and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56"); Vakilian v. Shaw, 335 F.3d 509, 515 (6th Cir.2003) (holding that "[b]ecause the district court considered matters outside the pleadings in rendering its decision on the defendant's motion to dismiss and for summary judgment, the decision will be treated as one for summary judgment").

The summary judgment is an appropriate procedure to determine a statute of limitations defense if there are no issues of material fact and the moving party claims entitlement to judgment on that defense as a matter of law. See Ball v. Union Carbide Corp., 385 F.3d 713, 721 (6th Cir. 2004). In this case, the facts are not in great dispute for the purpose of the present motion, which presents a legal issue for resolution. "By its very nature, a summary judgment does not involve the determination of disputed questions of fact, but is confined to purely legal issues." Eisenmann Corp. v. Sheet Metal Workers Intern. Ass'n Local No. 32, 323 F.3d 375, 380 (6th Cir.2003) (citing Fed.R.Civ.P. 56(c) (summary judgment may be granted only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law") and Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

The defendant concedes that after January 1, 2003 no written employment contract existed and summary judgment is inappropriate for claims arising after that date. However, the defendant insists that the contractually-shortened six-month period governs claims accruing before January 1, 2003 and, therefore, those claims are time-barred.

■ The FLSA contains a three-year period of limitations for willful violations and a two-year period of limitations for all other actions. 29 U.S.C. § 255(a). Under Michigan law, claims based on contract, including employment contracts, must be commenced within six years of the date the claim accrues. Mich. Comp. Laws § 600.5807(8). It is well recognized by Michigan courts, however, that parties may "contract around" the six-year contracts statute of limitations and specify a period of time less than the statutory limit as long as the abbreviated period is "reasonable." See e.g. Timko v. Oakwood Custom Coating, Inc., 244 Mich.App. 234, 625 N.W.2d 101 (2001); Herweyer v. Clark Hwy. Servs. Inc., 455 Mich. 14, 564 N.W.2d 857 (1997); Camelot Excavating Co., Inc. v. St. Paul Fire & Marine Ins. Co., 410 Mich. 118, 301 N.W.2d 275 (1981). An abbreviated period of limitations will be considered reasonable if "(1) the claimant has sufficient opportunity to investigate and file an action, (2) the time is not so short as to work a practical abrogation of the right of action, and (3) the action is not barred before the loss or damage can be ascertained." Herweyer, 455 Mich. at 20, 564 N.W.2d at 857 (citing Camelot Excavating, 410 Mich. at 127, 301 N.W.2d at 277).

■ Both Michigan courts and federal courts construing Michigan law have found that a six-month limitations period in an employment contract is not per se unreasonable. See Timko, 244 Mich.App. at 241, 625 N.W.2d at 105; Myers v. Western–

Southern Life Ins. Co., 849 F.2d 259, 260 (6th Cir.1988). In reaching that conclusion the courts have pointed to statutory provisions that limit the time for bringing certain labor-related claims within six months as evidence that such a period is not inherently unreasonable. See e.g., 29 U.S.C. 160(b) (stating that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board"); 42 U.S.C.2000e–5(e)(1) (requiring that "[a] charge [of an unlawful employment practice] under [Title VII of the Civil Rights Act] shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred"); Mich. Comp. Laws § 15.363 (establishing a ninety-day statute of limitations for claims brought under the Whistleblowers' Protection Act). Likewise, there is no general public policy prohibition against contractually-shortened limitations periods for employment contracts between private parties, even when the limitation affects civil rights claims. Myers, 849 F.2d at 261–62.

On the other hand, where a contractually-shortened limitations period effectuates a practical abrogation of a claimant's rights, such a contract term is generally not enforced. For example, in Rory v. Continental Ins. Co., 262 Mich.App. 679, 687 N.W.2d 304 (2004), the court voided a provision in a contract for uninsured motorist benefits that required claims to be brought within one year. The court reasoned that the insured would not have sufficient opportunity to investigate and file an action where the insured's physical condition would not be fully known and he likely would not know if the other driver was insured until commencing legal action. Similarly, in Salisbury v. Art Van Furniture, 938 F.Supp. 435, 437–38 (W.D.Mich. 1996), the court held that a contract term limiting the time for an employee to file an Americans with Disabilities Act claim to

six months was unreasonable because the Equal Employment Opportunity Commission has exclusive jurisdiction over such claims for that period of time, and the shortened period effectively would extinguish the claim.

■ The Court finds that the six-month limitation period contained in the plaintiffs' employment contract is reasonable with respect to their general contract claims. The plaintiffs contend that a six-month limitation term in a one-year employment contract works a practical abrogation of their rights because it places them in the unenviable position of having to bring suit against their employer while they are still employed. Although lawsuits generally do not advance good relations between employees and employers, it is not uncommon for employees to bring discrimination claims, Family and Medical Leave Act (FMLA) claims, and whistleblower actions, among others, against their current employers. In fact, the law prohibiting retaliation by employers exists to address just such a situation. The circumstance of having to sue a present employer in order to comply with a contractually-shortened period of limitations does not itself render the term unreasonable. Nor have the plaintiffs presented facts that suggest that they lacked sufficient opportunity to investigate and file their action within six months or their action was barred before their damage could be ascertained.

■ There is a different consideration, however, for the claims arising under the FLSA. A contractual agreement that limits an employee's enforcement rights can have public policy implications beyond those affecting the private parties to the contract. It is for that reason that employees generally are considered incompetent to compromise statutory rights created by the FLSA. *See Walling v. Portland Terminal Co.*, 330 U.S. 148, 155, 67 S.Ct. 639, 91 L.Ed. 809 (1947) (Jackson, J., concurring)

(observing that "[w]e have held the individual employee incompetent to compromise or release any part of whatever claim he may have" under the FLSA). The Court has reasoned that the FLSA, which created such fundamental workplace rights as the minimum wage, the forty-hour workweek, liquidated damages from offending employers, and the right to enforce these privileges in court, was intended "to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act. *Any custom or contract falling short of that basic policy,* like an agreement to pay less than the minimum wage requirements, *cannot be utilized to deprive employees of their statutory rights.*" *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers,* 325 U.S. 161, 167, 65 S.Ct. 1063, 89 L.Ed. 1534 (1945) (emphasis added).

The Supreme Court has recognized that labor is often a competitive enterprise, and that employees cannot be allowed to preempt the market by waiving statutorily-enacted rights intended to benefit laborers as a class for the expedient of making their individual services more attractive to an employer. *See Brooklyn Sav. Bank v. Maddrix Arsenal Bldg. Corp.* 324 U.S. 893, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). In *Brooklyn Savings Bank,* employees continually worked overtime for which they were not compensated as required by the FLSA. On each occasion, after the employment relationship ended the employer calculated overtime premiums due, offered the former employees less than the amount, and exacted a written waiver from the former employees stating that they released all rights under the Act in exchange for the payment. The Court held that such waivers contravened public policy and were not enforceable. The Court explained:

The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent *private contracts* on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce. To accomplish this purpose standards of minimum wages and maximum hours were provided.... No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act. We are of the opinion that the same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages.

*Id.* at 707, 65 S.Ct. 895 (emphasis added). The Court recognized that allowing a single group of employees to relax the requirements of the FLSA as they applied to them could affect the broader labor market. "An employer is not to be allowed to gain a competitive advantage by reason of the fact that his employees are more willing to waive claims for liquidated damages than are those of his competitor." *Id.* at 710, 65 S.Ct. 895.

In this case, the defendant argues that it is not seeking a waiver of the employees' substantive rights under the FLSA, but rather procedural rights represented by the statute of limitations. In light of the public policy implications, however, that is a distinction without a difference. The Supreme Court has held that other procedural rights under the FLSA, such as the

right to bring claims in court rather than in an arbitral forum, cannot be waived. *Barrentine v. Arkansas–Best Freight Sys. Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). In that case, the claimants were truck drivers whose demand for overtime pay was referred to an arbitrator under the terms of a collective bargaining agreement. The Court held that the arbitration clause could not bar the employees' access to a judicial forum. "This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Id.* at 740, 101 S.Ct. 1437.

Similarly, another judge in this District has held that a contractual provision reducing the period of limitations in FMLA cases is void because it contravenes public policy. *Lewis v. Harper Hosp.,* 241 F.Supp.2d 769 (2002). In that case, the court looked to a Department of Labor regulation that prohibited employers "from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act," 29 C.F.R. § 825.220(a)(1), and another stating that "[e]mployees cannot waive, nor may employers induce employees to waive, their rights under FMLA." 29 C.F.R. § 825.220(d). Although there is no concomitant regulation pertaining to the FLSA, the holding in *Lewis* is significant in that the court proclaimed that "imposing a six month statute of limitation is an interference with employees' rights under the FMLA where the statute of limitations is either two or three years." *Id.* at 773. Likewise, the six-month contractual adjustment of the two- and three-year stat-

ute of limitations in this case constitutes a compromise of the employees' rights under the FLSA.

The Sixth Circuit has held that in order to establish that public policy preempts a provision in a private contract, a claimant "need only show that the purpose of the contract provision is to create a situation which tends to operate to the detriment of the public interest; he need not demonstrate that the public interest has actually been harmed." *Myers*, 849 F.2d at 261. The Supreme Court has made clear the rule that rights under the FLSA cannot be abridged, compromised, or waived by private agreement. In light of the clear policy announced by the venerable Supreme Court decisions on the subject, this Court cannot enforce the contract term shortening the period of limitations with respect to the FLSA claims in this case because it violates public policy.

### III.

As mentioned earlier, the defendant acknowledges that there is no undisputed contract term shortening the statute of limitations for the plaintiffs' claims arising after January 1, 2003. The contract claims arising before that date, however, are subject to the six-month limitation period. Since the complaint in this case was not filed until July 26, 2004, those claims are barred. The bar does not apply, however, to claims brought under the FLSA. Intentional violations of the FLSA occurring three years prior to July 26, 2004, and all other FLSA claims arising two years before that date, are not subject to dismissal on statute of limitations grounds.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment [dkt # 7] is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that all of the contract claims arising before January 1, 2003, all intentional FLSA claims arising

before July 26, 2001, and all other FLSA claims arising before July 26, 2002, are **DISMISSED WITH PREJUDICE.**