**Holly E. SALISBURY, Plaintiff,**

**v.**

**ART VAN FURNITURE, Defendant.**

**No. 4:95–CV–107.**

United States District Court,
W.D.Michigan,
Southern Division.

March 12, 1996.

---

**436**

Chrostopher D. Morris, Ryan, Jamieson, Hubbel & Morris, Kalamazoo, MI, for plaintiff.

Michael T. Zambricki, Art Van Furniture, Warren, MI, for defendant.

## *OPINION*

ROBERT HOLMES BELL, District Judge.

Before the court is defendant's motion for summary judgment on plaintiff's claims under the Americans with Disabilities Act (ADA) and for negligence.

### *Background*

Plaintiff Holly Salisbury (Salisbury) applied for a sales position with defendant Art Van Furniture (Art Van) in July 1994. The employment application signed by Salisbury contained a statement in which she agreed

> not to commence any action or suit relating to [her] employment with Art Van [ ] more than six (6) months after [her] date of termination or the date that [she was] not hired for employment with Art Van [ ], and that [she] waived any statute of limitations to the contrary.

The employment application also contains several questions relating to an applicant's handicap and the need for accommodation. Specifically, it asks, "Do you have any impairments (physical, mental, or medical) which interfere with your ability to do the job for which you applied?" Salisbury responded "no" to this question.

Salisbury was interviewed, hired and scheduled to take, on July 19, 1994, a physical examination and drug test required of all new employees. Salisbury alleges that she told Dennis Carr (Carr), manager of the Art Van store, that the drug screen could be problematic because she was taking a prescription medication. She also asserts that she advised the physician performing the examination of the medications she was taking. The examining physician's statement indicates that Salisbury communicated past problems with, among other things, "joint problems/arthritis." The physician classified her as "[q]ualified without restriction with controllable defect" and recommended "no lifting, pulling or pushing > 5 lbs with [right] arm or above shoulder work with [right] arm." Art Van was informed by its medical clinic that Salisbury failed her drug test, having tested positive for Valium and Xanax, two controlled substances that cannot be legally taken without a prescription. On July 21, 1994, Salisbury's employment was terminated by Carr based upon the drug test result and Art Van's drug-free work policy.

Salisbury claims that at the time she was informed that the drug test was positive she submitted all of her prescription bottles to the medical office and let them copy the information off the bottles for their records. She also requested from her pharmacist the package inserts from the Daypro medication, which indicates that the medication has resulted in false positive results for benzodiazepines. This conclusion is also stated in the June 28, 1995, issue of the Journal of the American Medical Association. Salisbury claims that she provided the foregoing information to the medical clinic and requested a confirmatory drug screen at her own expense which the clinic refused to perform.

The screening physician determined that the drug Salisbury stated she had legally taken (Daypro) would not have produced the positive result for the use of drugs as determined by the test. Art Van alleges that the physician recommended two courses of action. First, Salisbury should have her physician, who prescribed the Daypro that allegedly caused the false positive test result, contact Art Van's physician to discuss the test results. Second, he suggested that another test be conducted on Salisbury's existing urine sample to confirm the test results. Salisbury opted not to have her physician contact Art Van's physician and, specifically directed Art Van's physician not to conduct

further tests on her sample until directed by her or her attorney.

Salisbury challenged her termination with the Michigan Department of Civil Rights and the federal Equal Employment Opportunity Commission (EEOC). After six months had passed without administrative relief, Salisbury requested the requisite "Right to Sue" letter from the EEOC and filed her suit under the ADA on June 5, 1995, over ten months after her employment was terminated.

Resolution of this motion requires the court to consider whether (1) Salisbury's ADA and negligence complaint is time-barred by the six month limitation period specified in her contract; (2) Salisbury has stated a prima facie case of discrimination under the ADA; and (3) under Salisbury's negligence claim, she has alleged any duty that could have been breached?

## I. Complaints Time–Barred by Statute of Limitations in Contract?

Reasonable statute of limitations contained within contracts, though being for a shorter period than prescribed by statute, have been upheld by state and federal courts. *Aldalali v. Underwriters at Lloyd's London,* 174 Mich.App. 395, 435 N.W.2d 498 (1989) (one year limitation in insurance contract bars action for the breach thereof); *Camelot Excavating Co., Inc. v. St. Paul Fire & Marine Ins. Co.* 410 Mich. 118, 301 N.W.2d 275 (1981) (one-year limitation in private performance bond bars action on the bond); *Newman v. Jewish Family Serv.,* Mich.Ct. of App. No. 145910 (Sept. 21, 1994) (six month limitation in employment application bars negligent misrepresentation/detrimental reliance action); *Myers v. W.–S. Life Ins. Co.,* 849 F.2d 259 (6th Cir.1988) (six-month limitation in employment contract bars Elliot–Larsen Civil Rights action and suit under Michigan Handicappers' Civil Rights Act); *Perez v. W.–S. Life Ins. Co.,* 2 IER Cases 375, 376 (E.D.Mich.1987) (six month limitation in employment contract bars Elliot–Larsen Civil Rights action).

The same is true with respect to causes of action arising out of federal law. "When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985). Courts have applied this rule in determining the statute of limitations under the ADA. *Doukas v. Metro. Life Ins. Co.,* 882 F.Supp. 1197 (D.N.H.1995); *Doe v. County of Milwaukee,* 871 F.Supp. 1072 (E.D.Wis.1995). There is no dispute with respect to state law permitting a shorter statute of limitations if contracted for by the parties.

■■■ Salisbury argues that, since she could not legally file suit until six months had elapsed from the filing of her administrative charge,[1] the six month statute of limitations must be tolled during the pendency of the administrative action. "The boundaries of what is reasonable under the general rule [that statute of limitations in contracts are upheld if reasonable] require that ... the time not be so short as to work a practical abrogation of the right of action...." *Camelot,* 410 Mich. at 127, 301 N.W.2d at 277 (1981). The *Perez* court ruled that a contractual statute of limitations was *not* tolled by the filing of a charge with an administrative agency. 2 IER Cases at 376. It did not, however, appear in *Perez* that the plaintiff was legally disabled from filing a claim. Likewise, the *Myers* court recognized that the applicable statute of limitations does not toll under Michigan law with the filing of an administrative complaint. 849 F.2d at 261. But again, it would seem that a different issue appears where the federal statute which confers a private right of action precludes the same during the entire period permitted to file an action under a contractual provision.

The employment application signed by Salisbury, in light of the foregoing authorities, would certainly preclude Salisbury's negligence action. With respect to the ADA

---

1. *See* 42 U.S.C. § 12117(a); *Sherman v. Optical Imaging Systems, Inc.,* 843 F.Supp. 1168, 1179 (E.D.Mich.1994).

438

claim, the contractual limitation certainly effected a "practical abrogation" of the right to file an ADA claim and is, therefore, unreasonable under *Camelot.*

## II. Prima Facie Case of Discrimination Pled?

### A. Did Art Van have knowledge of Salisbury's alleged disability?

■ The ADA prohibits discrimination in employment against a "qualified individual with a disability," 42 U.S.C. § 12112(a). That is, a person "who, with or without reasonable accommodation, can perform the essential functions of the job." 42 U.S.C. § 12111(8). An employer is obligated to make an accommodation only to the *known* limitations of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A). An employer, therefore, cannot be held liable for discrimination on the basis of handicap without knowledge of an employee's disability. *Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178 (6th Cir.1993). An employee who answered "no" to an application question regarding whether she had any physical or health limitations did not provide the employer with sufficient knowledge of her migraine headaches. Thus, the employer could not be held liable for failing to attempt a reasonable accommodation. *Carlson v. InaCom Corp.,* 885 F.Supp. 1314 (D.Neb.1995).

■ Likewise, Salisbury answered "no" to an employment application question pertaining to any impairments that could interfere with her job. Art Van was provided with knowledge of her medical history including arthritis and the recommended restrictions. Is a history of past "arthritis/joint problems," however, and the restrictions upon lifting, etc. a "disability" under the ADA? The ADA defines "disability" as a "physical or mental impairment that substantially limits one or more of the major life activities," "a record of such impairment" or "being regarded as having such impairment." 42 U.S.C. § 12102(2). Neither Salisbury directly nor the physician's report put Art Van on notice that Salisbury was "substantially limited in one of the major life activities." If anything, the physician's report indicating that she was qualified with-

out restrictions produced the opposite effect. The controllable defect elaborated upon in the restrictions mentioned are surely generic and cannot pertain to furniture sales work. It is clear that Salisbury was fired for failing a drug test. Whether Art Van should have given more consideration to the possibility of a false positive result does not cure her failure to come forth with a prima facie case of discrimination under the ADA.

## II. Negligence Claim: Duty Alleged?

■ In count two of Salisbury's complaint, she alleges the negligence of Art Van in the manner in which it conducted its drug test; in failing to ascertain whether she was capable of employment with accommodation, and; in failing to timely accommodate her request for employment. These allegations are not independent of the parties' employment contract (no drug testing would have been performed in the absence of an employment relationship) and, thus, not compensable. *See Kewin v. Mass. Mut. Ins. Co.,* 409 Mich. 401, 418–19, 295 N.W.2d 50, 54 (1980). *See also Eilander v. Liberty Homes, Inc.,* 1:95–CV–72 (W.D.Mich., December 5, 1995) (plaintiff conceding that his claim for negligence performance of an employment contract should be dismissed for failure to allege a duty independent of the employment contract). Assuming all allegations were true, Salisbury's claims arise out of her contract with Art Van. Art Van has no independent duty to administer a drug test reasonably, *see DiTomaso v. Electronic Data Systems,* 1988 WL 156317 (E.D.Mich.), or to accommodate her alleged arthritic disability.

For the reasons stated, defendant's motion for summary judgment is granted. An order consistent with this opinion will be entered.