**Jerry L. McDONALD, Plaintiff,**

v.

**FORD MOTOR COMPANY, Defendant.**

**No. 3:01 CV 7081.**

United States District Court,
N.D. Ohio,
Western Division.

April 19, 2002.

William J. O'Malley, Columbus, OH, for Jerry L. McDonald, Plaintiff.

Ellen J. Garling, Baker & Hostetler, Marla D. Clark, Baker & Hostetler, Columbus, OH, for Ford Motor Company, Defendant.

## ORDER

CARR, District Judge.

Plaintiff Jerry L. McDonald brings this action against Defendant Ford Motor Company claiming he was discriminated against on the basis of disability. This court has jurisdiction pursuant to 28 U.S.C. § 1331. Pending is defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the following reasons, defendant's motion shall be granted.

## BACKGROUND

Plaintiff began working for defendant in June 1965, as an assembly employee. Defendant promoted plaintiff to a toolmaker position in 1978.

Plaintiff alleges he has suffered foot and back problems for over twenty years. Defendant knows of the back problems, and plaintiff has been examined by several physicians chosen by defendant over the course of plaintiff's employment.

In April, 2000, plaintiff refused to perform a job to which he was assigned, and plaintiff was disciplined. On the following day, defendant assigned plaintiff to a job and plaintiff refused the assignment. Plaintiff again was disciplined because of his refusal. In May, 2000, plaintiff was given a medical leave of absence for several months. Plaintiff alleges this medical leave resulted from an alleged unavailability of suitable employment.

In January, 2001, plaintiff asked the plant nurse questions about an insurance form plaintiff received. Plaintiff alleges the nurse became angry and admits the conversation "became heated." (Doc. 1 at ¶ 12). Defendant gave plaintiff a one week suspension for raising his voice during the discussion with the nurse. During a meeting to discuss the discipline, plaintiff became angry and left the meeting. Plaintiff was given an additional two week suspension. Plaintiff alleges the reason for his additional suspension was his failure to remain at the meeting.

In March, 2001, plaintiff was given a thirty day suspension for an interaction with a security guard when a parking violation sticker was left on his car for parking in an unauthorized parking spot. In July, 2001, plaintiff received a write-up and shift suspension for allegedly not putting forth sincere effort and taking too long on a project with a deadline.

In August, 2001, plaintiff was given a thirty day suspension for insubordination. Plaintiff was told to let his supervisor know when he finished with work. Following a confrontation with this supervisor, plaintiff told the supervisor he could

"stick his direct order." (Doc. 35 at 10) (citation omitted).

Plaintiff filed a disability discrimination charge with the Equal Opportunity Commission, and the EEOC issued a right to sue letter on November 29, 2000. Plaintiff brings this suit alleging a violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and Ohio Revised Code § 4112.99 through disability discrimination, retaliation, and wrongful discharge in violation of public policy.

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary ma-

terial in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## DISCUSSION

### I. Discrimination Because of Disability

Plaintiff argues defendant violated the Americans with Disabilities Act ("ADA") and O.R.C. § 4112.99 by failing to give plaintiff overtime and disciplining him because of his disability.

Title I of the ADA provides, "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

Under Ohio law, it is unlawful "for any employer, because of the ... handicap, ... of any person, to discharge without just cause, to refuse to hire, or otherwise discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter direct-

ly or indirectly related to employment." O.R.C. § 4112.02(A).

The Ohio Supreme Court has urged courts to look to the ADA for guidance in interpreting Ohio's prohibition on disability discrimination. *City of Columbus Civil Serv. Comm'n v. McGlone*, 82 Ohio St.3d 569, 573, 697 N.E.2d 204 (1998) ("The Americans with Disabilities Act ('ADA') is similar to the Ohio handicap discrimination law.... We can look to regulations and cases interpreting the federal Act for guidance in our interpretation of Ohio law.").

The claims asserted by plaintiff—that defendant failed to provide him with overtime and disciplined him because of his disability—are disparate treatment claims. A plaintiff can prove disparate treatment discrimination through either direct or indirect evidence of discrimination. Absent direct evidence of disparate treatment discrimination, a plaintiff must prove discrimination through indirect evidence and the framework first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Johnson v. University of Cincinnati*, 215 F.3d 561, 572 (6th Cir.2000) ("A plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination, or by proving circumstantial evidence which would support an inference of discrimination.") (citing *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)).

## A. Overtime

### 1. Existence of Direct Evidence

Plaintiff contends that he has direct evidence that defendant discriminated against him on the basis of disability in assignment of overtime because he "was denied overtime outside of the toolroom due to his back and foot conditions." (Doc. 35 at 12). Plaintiff contends that, because defendant required plaintiff to work in the toolroom due to plaintiff's medical conditions, defendant discriminated on the basis of disability in allocating overtime available elsewhere in the plant.

An employee who otherwise qualifies for overtime cannot do the overtime work if doing so would require the employee to work in an area in which he is not permitted by defendant. In such circumstances, plaintiff is passed by and his name is placed at the end of the eligibility list. Plaintiff contends that this system has caused him to lose "hundreds of hours of overtime ..., which has cost him tens of thousands of dollars." (Doc. 35 at 6) (citations omitted).

Direct evidence of discrimination exists "when an employer admits (or the evidence establishes) that its decision was based upon the employee's disability." *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1180 (6th Cir.1996); *see also Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir.1998) ("[Direct] evidence would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled.'")

Defendant has not disputed that it relied on plaintiff's medical restrictions in assigning (or failing to assign) overtime. Plaintiff, therefore, presents direct evidence that defendant relied on plaintiff's medical conditions in making the overtime decisions.

### 2. Legal Framework

In a case where a plaintiff has direct evidence that an employer relied on plaintiff's medical condition to make an employment decision or if the employer admits such reliance:

1) The plaintiff bears the burden of establishing that he or she is "disabled."

2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: a) without accommodation from the employer; b) with an al-

leged "essential" job requirement eliminated; or c) with a proposed reasonable accommodation.

3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Monette,* 90 F.3d at 1186 (footnote omitted).

Defendant argues that: 1) plaintiff is not disabled; 2) plaintiff is not qualified to work outside the toolroom; and 3) plaintiff's requested accommodation is an undue hardship.

### 3. Whether Plaintiff is Disabled

Defendant contends that plaintiff is not disabled under the ADA because plaintiff cannot establish he is substantially limited in any major life activity. Defendant argues that other courts have held that plaintiff's condition—spondylolisthesis, other chronic back problems, and a foot problem—are not disabilities under the ADA.[1]

Under the ADA, a disability is:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

A physical impairment is "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1). Defendant does not dispute that plaintiff has some sort of physical impairment.

A major life activity "means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

A person who is substantially limited in a major life activity is:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

Plaintiff argues he is substantially limited in the major life activities of walking, performing manual tasks, caring for himself, and working.

#### a. Walking

Plaintiff contends he has foot problems which result in difficulty in walking and standing for long periods of time. He alleges that he suffers from significant foot pain every day. Plaintiff contends he was diagnosed with a flat arch in his left foot in middle school and had to wear corrective shoes for many years. He contends the condition never was corrected and still suffers from pain in his foot. He also contends the military refused to accept him because of his back and foot conditions.

---

1. Spondylolisthesis is the "forward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum." PDR MEDICAL DICTIONARY 1678 (2d ed.2000).

Several factors must be considered to determine whether plaintiff is substantially limited in walking because of his back and foot conditions: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(2).

Consideration of these factors demonstrates that a material issue of fact exists as to whether plaintiff is substantially limited in the major life activity of walking. While plaintiff only presents his own testimony, construing that testimony in the light most favorable to plaintiff indicates that plaintiff has difficulty standing and walking for long periods of time and suffers "significant pain." (Doc. 35 at 13). His foot condition has lasted for many years and allegedly continues to be painful.

While "moderate difficulty or pain experienced while walking does not rise to the level of a disability," plaintiff presents testimony that he experiences more than moderate difficulty or pain. *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir.1997). As I must construe this testimony in the light most favorable to plaintiff and defendant does not dispute plaintiff's argument, I must find that a genuine issue of material fact remains as to whether plaintiff is substantially limited in walking.

### 4. Plaintiff's Qualifications and Essential Functions

█ Plaintiff argues he is qualified for a toolmaker position and, therefore, qualified to work outside the toolroom, because he can perform the essential functions of the position with reasonable accommodation.

Defendant contends that plaintiff is not qualified to work outside the toolroom and thus is not qualified for the overtime which is the basis for this suit. Defendant argues,

[T]oolmakers are required to crawl under, over, around, and into production machines in order to repair and replace parts.... A toolmaker cannot possibly perform these duties without twisting more than 15 degrees, and, on occasion, lifting in excess of 30 pounds or below knee level.... Thus, Plaintiff is prohibited from performing work in the production areas.

(Doc. 29 at 23) (citations omitted).

Defendant argues, "[Defendant] especially accommodates Plaintiff by bumping more senior toolmakers assigned to the toolroom out to the production areas when Plaintiff and a more senior toolmaker are both up for overtime." (Doc. 29 at 24) (citing Pl.'s Dep. at 291).

When a plaintiff's theory is that the plaintiff successfully could perform a position with a reasonable accommodation, the Sixth Circuit requires a plaintiff to propose an accommodation. *Monette*, 90 F.3d at 1183. The court, in *Monette*, stated, "[T]he disabled individual bears the initial burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable. The Seventh Circuit has described the employee's initial burden on this issue as showing 'that the accommodation is reasonable in the sense both of efficacious and of proportional to costs.' " *Id.* (quoting *Vande Zande v. State of Wisconsin Dep't of Admin.*, 44 F.3d 538, 543 (7th Cir.1995)).

Plaintiff's opposition brief presents no evidence other than his bald assertion that he can perform overtime outside the toolroom successfully with some reasonable accommodation. Plaintiff's entire argument that he is otherwise qualified for the overtime outside the toolroom states:

Plaintiff must prove that he is otherwise qualified for his position as a toolmaker either without accommodation, with reasonable accommodation, or with

an alleged essential job requirement eliminated. *Monette*, 90 F.3d at 1186.

Having been a toolmaker for over twenty years, and having worked at Ford since 1965, there can be little doubt Mr. McDonald is qualified to hold his position. Even given his medical restrictions, Mr. McDonald can successfully perform the essential functions of his position with some reasonable accommodation. That is precisely what he has been doing for many years.

(Doc. 35 at 15).

Plaintiff, however, does not specify the nature of the accommodations he would need to perform overtime outside the toolroom. Because plaintiff has the burden of proposing an accommodation and showing it objectively is reasonable, and because he offers nothing other than his bald assertion without specific examples, plaintiff cannot meet his burden of proof.

 Even if, as defendant contends, plaintiff's opposition brief and deposition testimony alternatively are read to request the accommodation of allowing plaintiff to unilaterally determine which jobs he can perform, plaintiff cannot meet his burden.

Plaintiff testified in deposition:

Question: Is it fair to say that what you wanted to have your medical restrictions be, that you wanted to be able to be assigned any job and determine—self-determine yourself whether you could do it or not?

[Plaintiff]: Fair statement.

(Pl.'s Dep. at 267).

The ADA does not provide a plaintiff with the discretion unilaterally to determine an accommodation. *See Keever v. City of Middletown*, 145 F.3d 809, 812 (6th Cir.1998) ("Under the ADA regulations, the employer has the ultimate discretion to choose between effective accommodations.") (citing 29 C.F.R. pt. 1630, app. at 415); *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800–01 (6th Cir.1996) ("As the Supreme Court has held in analogous circumstances, an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided.") (citation omitted).

No genuine issue of material fact remains as to whether plaintiff is otherwise qualified for overtime outside the toolroom precisely because plaintiff has failed to create one at all. Plaintiff simply has argued that he wants to work overtime outside the toolroom. He has not met his burden of proposing an accommodation, especially when he admits he would need an accommodation, that would allow him to perform the essential functions of working overtime outside the toolroom. *Brown v. Chase Brass & Copper Co.*, 2001 WL 814931, at *5, 14 Fed.Appx. 482 (6th Cir. 2001) ("Since he failed to propose an accommodation of his disability, he cannot satisfy the second element of his prima facie case (being qualified to perform the essential functions of his job with a reasonable accommodation), so his ADA claim fails.").

Even if I consider plaintiff's deposition testimony and his request unilaterally to determine his own accommodation, despite his failure to mention any accommodation in his argument, plaintiff still cannot meet his burden because an employee is not entitled unilaterally to determine an accommodation.

Defendant's motion for summary judgment on plaintiff's overtime claim shall be granted.

## B. Discipline

Plaintiff argues that he has indirect evidence that defendant discriminated against plaintiff on the basis of disability in disciplining him.

### 1. Legal Framework

When a plaintiff does not have direct evidence of discrimination, the plaintiff must prove discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff must show a prima facie case: "(1) he is disabled; (2) he is otherwise qualified for the position; (3) he suffered an adverse employment decision; (4) the employer knew or had reason to know of his disability; and (5) ... similarly situated non-protected employees were treated more favorably." *Hopkins v. Electronic Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir.1999) (citing *Monette*, 90 F.3d at 1185; *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir.1995)).

If plaintiff establishes his prima facie case by a preponderance of the evidence, the defendant must offer a legitimate nondiscriminatory reason for the its action. *Monette*, 90 F.3d at 1186. Plaintiff retains the burden of proving the defendant's explanation is false or pretextual. *Id.*

Defendant contends; 1) plaintiff cannot prove he is disabled; 2) some of plaintiff's discipline did not rise to the level of an adverse employment action; 3) plaintiff cannot show that similarly-situated employees were treated more favorably; 4) defendant had several legitimate non-discriminatory reasons for its actions; and 5) plaintiff cannot prove pretext. Because I agree with defendant's argument that plaintiff cannot show that similarly-situated employees were treated more favorably and because plaintiff does not dispute defendant's argument, I decline to address defendant's remaining arguments.

### 2. Treatment of Similarly–Situated Employees

 Defendant contends plaintiff must show that "other non-disabled employees, reporting to the same supervisor, engaged in the same or similar conduct, but were disciplined less severely." (Doc. 29 at 17) (citation omitted).

Plaintiff makes no argument in response. In fact, plaintiff entirely omits this element in discussing his prima facie case. Plaintiff cites the elements of his prima facie case as: "This prima facie case requires an employee to show that he was disabled, was qualified to perform the job requirements, with or without reasonable accommodation, that an adverse employment action was made, and that the employer had knowledge of the disability." (Doc. 35 at 16) (citations omitted). Plaintiff fails to mention and discuss the fifth element of his prima facie case: that similarly-situated employees were treated differently.

In any event, as defendant argues, plaintiff's deposition testimony reveals that he cannot meet this burden. Plaintiff's deposition testimony states:

Question: Any of these people you know of ever gotten in an argument, raised their voice at the plant nurse?

[Plaintiff]: ... I'm sure Bill McKinley got in an argument with those plant nurses.

Question: Okay. Did he get disciplined?

[Plaintiff]: No.

Question: Were you there for the argument?

. . . . .

[Plaintiff]: No....

Question: Did you hear his interaction with the plant nurse?

[Plaintiff]: No.

. . . . .

Question: Any of these people that we have talked about, this list of people that we've named, ever walked out of hearing, that you know of?

[Plaintiff]: No.

Question: Any of these people—did Darren Verhoff ever give any of these people an assignment that he needed to be finished by a certain time that they didn't accomplish, that you know of?

[Plaintiff]: I'm sure over the years this has happened some time or another.

Question: But you don't know of anything specific?

[Plaintiff]: Not specifically, no.

Question: Any of these people that we've listed ever tell Darren Verhoff that you could take his direct order and stick it?

. . . . .

[Plaintiff]: Not that I am aware of . . . .

(Pl.'s Dep. at 180–83).

Plaintiff's deposition testimony concedes either that he does not know of other employees who committed the same or similar acts for which he was disciplined or that he does not know enough specific information about any acts to establish that the similarly-situated non-disabled employees committed the same acts. Plaintiff, therefore, cannot meet his prima facie burden of showing that similarly-situated non-disabled employees were treated differently.

Defendant's motion for summary judgment on plaintiff's discipline claim shall be granted.

## II. Retaliation

Plaintiff argues defendant violated the ADA and Revised Code § 4112.99 by disciplining plaintiff for filing a civil rights charge.

Plaintiff contends he was subjected to various disciplinary actions after filing his EEOC charge: 1) a shift and three day suspension for refusal to do a job that he knew would cause back pain in May, 2001; 2) a one week suspension for an interaction with the plant nurse in January, 2001; 3) an additional two week suspension for leaving the meeting to discuss the interaction with the plant nurse; 4) a thirty day suspension for an interaction with a security guard over a ticket for parking in an unauthorized parking space in March, 2001; 5) a write-up and shift suspension for allegedly not putting forth sincere effort July, 2001; and 6) a thirty day suspension for insubordination in August, 2001.

### A. Legal Framework

The ADA provides:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act.

42 U.S.C. § 12203(b).

Ohio Revised Code 4112.02 provides:

It shall be an unlawful discriminatory practice:

(I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

A plaintiff alleging retaliation must establish a prima facie case: 1) the plaintiff engaged in protected activity; 2) the employer know of plaintiff's exercise of his or her protected rights; 3) the employer later took an adverse employment action against plaintiff; and 4) a causal connection between the protected activity and the adverse employment action. *Cain v. Airborne Express,* 1999 WL 717948, at *3, 188 F.3d 506 (6th Cir.1999) (citing *Canitia v.*

*Yellow Freight Sys., Inc.,* 903 F.2d 1064, 1066 (6th Cir.1990)).

If the plaintiff establishes this prima facie case, the burden is shifted and the employer must put forth a legitimate non-discriminatory reason for its action. *Id.* (citing *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 862 (6th Cir.1997); *Jackson v. Pepsi–Cola, Dr. Pepper Bottling Co.,* 783 F.2d 50, 54 (6th Cir.1986)). The plaintiff then may rebut the employer's reason by "producing 'credible evidence' that such a reason was a mere pretext for discrimination." *Id.* (citing *Jackson,* 783 F.2d at 54).

Defendant argues that plaintiff's retaliation claim fails because plaintiff either cannot establish a prima facie case or cannot show defendant's legitimate nondiscriminatory reasons were pretextual with respect to the various claimed disciplinary actions.

## B. Disciplinary Actions

### 1. Shift and Three Day Suspension for Job Refusal

■ Defendant contends plaintiff cannot establish the required causal connection element of his prima facie case with respect to plaintiff's shift and three day suspension for refusing to do a job. Defendant argues that the suspensions occurred prior to the filing of plaintiff's EEOC charge. I agree.

A letter dated May 18, 2000, discusses plaintiff's refusal to do the job for which he was suspended. Plaintiff did not file his EEOC charge until August 16, 2000. Defendant could not have retaliated for protected activity that did not occur until after the disciplinary action.

### 2. Remaining Disciplinary Actions

■ Defendant argues that plaintiff cannot establish his prima facie case for the remaining disciplinary actions because of the time span between the filing of the discrimination charge and the disciplinary actions.

In *Hafford v. Seidner,* 183 F.3d 506, 515 (6th Cir.1999), the court determined that the plaintiff could not establish a causal connection between the discipline and the filing of a discrimination charge because the disciplinary actions occurred several months after the plaintiff filed the charge and evenly were spread over time. The court stated,

We agree with the magistrate judge that "because the disciplinary actions occurred two to five months after Hafford filed charges, and are fairly evenly spread over a period of time, the inference of a causal connection based on temporal proximity alone is tenuous." Absent additional evidence, this loose temporal proximity is insufficient to create a triable issue.

*Id.*

The record demonstrates that plaintiff was not disciplined until January, 2001—five months after he filed his discrimination charge in August, 2000. The record further demonstrates that plaintiff was disciplined several times after that in March, July, and August, 2001. This case is governed by *Hafford* because the first disciplinary incident occurred five months after plaintiff filed his discrimination charge and the remaining disciplinary incidents are spread out evenly over time. As such, the causal connection is tenuous and the loose temporal proximity does not create a genuine issue of material fact absent additional evidence of retaliation.

Plaintiff, furthermore, admits facts that demonstrate he either failed to follow defendant's rules or disrupted the workplace. Plaintiff, for example, admitted that he told his supervisor to "take [his] direct order and stick it" when his supervisor questioned plaintiff's failure to inform him when plaintiff finished his work. (Pl.'s Dep. at 185, 231). Plaintiff also admits that "he was less than completely cordial

with [the plant nurse]" when questioning her about a bill he received. (Doc. 35 at 19). Plaintiff admits that, on seeing a parking violation sticker on his car for parking in an unauthorized spot, he "became upset ... and was expressing his frustration." (Doc. 35 at 19).

Failure to follow an employer's rules or disruption of the workplace is not protected by the ADA, and plaintiff, therefore, cannot prove his retaliation claim. *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir.1999) ("Although contesting an unlawful employment practice is protected conduct, the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace.") (citations omitted).

Defendant's motion for summary judgment on plaintiff's retaliation claim based on discipline shall be granted.

### III. Wrongful Discharge in Violation of Public Policy

 Plaintiff's amended complaint "states a cause of action for employment termination in violation of the public policy of the State of Ohio." (Doc. 12 at ¶ 33).

Defendant argues that plaintiff currently is employed by defendant, and therefore, plaintiff's claim must fail.

Plaintiff fails to oppose this argument. Plaintiff's claim for wrongful discharge in violation of public policy shall be, therefore, dismissed.

Defendant's argument, furthermore, is well-taken. Plaintiff concedes that he continues to work for defendant. (Doc. 35 at 1) ("[Plaintiff] began at Ford in 1965 as a production employee. He has worked for Ford ever since."). A dismissal is required to establish a claim of wrongful discharge in violation of Ohio's public policy, and plaintiff, therefore cannot establish this claim because he was not discharged. *Godfredson v. Hess & Clark, Inc.,* 173 F.3d

365, 375 (6th Cir.1999) (citing *Kulch v. Structural Fibers, Inc.,* 78 Ohio St.3d 134, 677 N.E.2d 308 (1997)).

Defendant's motion for summary judgment on plaintiff's wrongful discharge claim shall be granted.

### CONCLUSION

It is, therefore,

### ORDERED THAT

Defendant's motion for summary judgment be, and hereby is, granted.

**So ordered.**