Loretta Frazier STEWARD, Plaintiff,

v.

**DAIMLERCHRYSLER CORPORATION,**
Defendants.

Civil No. 06–14858.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 30, 2008.

Nanette L. Korpi, Southfield, MI, for Plaintiff.

Richard M. Tuyn, Ogletree, Deakins, Bloomfield Hills, MI, for Defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO DISMISS COUNT IV OF THE COMPLAINT

JOHN FEIKENS, District Judge.

This matter is a four count complaint that was initially filed by Plaintiff, Loretta Frazier Steward (Steward) in Wayne County Circuit Court. When first filed, it only alleged state claims, but upon amending her complaint, a federal claim under the Americans with Disabilities Act (ADA) was added, and the matter was removed to this Court on October 26, 2006. Defendant DaimlerChrysler (Chrysler) asks for summary judgment. For the reasons stated below I GRANT Chrysler's motion and

DISMISS this case. In turn, I must also DENY Plaintiff's Motion to Dismiss Count IV of the Complaint as moot.

## I. FACTUAL BACKGROUND

The complaint states four claims: (1) violation of Michigan's Elliott–Larsen Civil Rights Act for race discrimination; (2) intentional affliction of emotional distress; (3) violation of Michigan's Persons with Disabilities Civil Rights Act (PWDCRA); and (4) violation of the federal Americans with Disabilities Act (ADA).

### A. PLAINTIFF'S EMPLOYMENT HISTORY

Plaintiff filled out an employment application with Chrysler in August 1995. The application, which she signed, contained the following clause regarding lawsuits:

I agree that any claim or lawsuit relating to my service with Chrysler Corporation or any of its subsidiaries must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit. I waive any statute of limitations to the contrary.

Subject to that application, Chrysler hired Plaintiff in January 1997 to work as an hourly employee at the Viper plant on Conner Avenue. On March 7, 2005, Chrysler placed her on paid lay off because there was no work available within her physical restrictions. Plaintiff then filed this Complaint on August 5, 2005.

### B. PLAINTIFF'S ALLEGATIONS OF RACE DISCRIMINATION

Plaintiff alleges that her supervisor, John McKerley, ran a segregated assembly line from 2003 until the time she left in 2005[1]. One end of the line was made up of whites, or as Steward calls them, "the good old boys." The other end, with the exception of one white male, was made up of African–Americans. Plaintiff in her deposition describes a situation in which the heavy work was one-sided, falling mostly on the African–American employees, even to the point of asking her and other African–Americans to run errands and finish unassigned work while the white employees were idle. Plaintiff also alleges that she was discriminated against by being refused bathroom breaks, even though white employees were allowed these breaks, and in the distribution of overtime.

Defendant Chrysler states that these claims are undermined by Plaintiff's own testimony. First, she admits that she was teamed with a white employee, and that a white employee was assigned to the end of the line that she claims was African–American. Second, she admits that she personally selected her station on the assembly line and that she has no knowledge of how other African–Americans were selected for their stations. Third, Defendant states that Plaintiff testified at deposition that she was not docked pay, did not receive a demotion, and did not experience any other adverse job action that would constitute materially adverse changes in the terms and conditions of her employment. Finally, Defendant asserts that most of Plaintiff's allegations occurred prior to February 5, 2005, meaning that those allegations would fall prior to the previously mentioned six-month limit on litigation. If true, the only remaining claims would be Plaintiff's accusation that Chrysler failed to provide her a reasonable accommodation for her medical conditions and whether her lay off was a retaliatory action for filing a complaint with the EEOC.

---

1. The dates regarding this discrimination are very generalized. I cannot ascertain from them exactly when this alleged discrimination occurred. However, it is Plaintiff's burden to give a more specific time frame for these alleged acts.

## C. PLAINTIFF'S ADA AND PWDCRA CLAIMS (DISABILITY CLAIMS)

Plaintiff alleges bilateral carpal tunnel syndrome (pain in her hands, difficulty grasping) and left ulnar neuropathy (shoulder and neck pain) keep her from performing the duties assigned to her on the assembly line, specifically work putting windshields in place. In October 2004, doctors determined that she could not lift over 10 pounds with her left hand, that she could not push or pull anything over 10 pounds, and that at all times she needed to wear padded gloves. According to Plaintiff, that same month an email was sent from a Chrysler human resources specialist to McKerley and two other Viper plant supervisors. In that email, the human resources specialist identified a position on the assembly line that could accommodate Plaintiff, and stated that even though another worker was in that position, Steward should be given the job because she had greater seniority. Steward further claims that she could have performed her originally assigned duties if she had been given a helper.

On March 16, 2005, Steward filed charges against Chrysler with the EEOC. A day later she received notice that she was laid off. She asserts that the layoff was retaliation for filing the EEOC charge.

Defendant counters that Plaintiff's current doctor testified that she is unable to perform any work on an assembly line, and that he prefer that Plaintiff's job be limited to tasks that do not require her to lift her arm at or above shoulder level, use any power or vibratory tools, or use a screwdriver. As a result, Chrysler cannot find work for her within these restrictions. Chrysler further states that Plaintiff admits she was not "terminated" but rather was laid off because there were no positions available that could accommodate her restrictions. In its efforts to accommodate Plaintiff, Chrysler assigned Plaintiff an assistant in late January 2005 who could help her lift windshields into place. However, budget issues forced Chrysler to discontinue this practice. Other positions that could accommodate Plaintiff such as housekeeping, counting parts, and sub-assembly are filled, and Plaintiff stated that she is not aware of any open jobs in these positions.

Chrysler goes on to state that it makes little, if any, sense for it to keep Plaintiff on paid lay off. In 2006 alone, Plaintiff was paid $37,084. Although Plaintiff alleges Chrysler leaves her on paid lay off out of racial animosity, Chrysler counters that 10 other employees at Chrysler are also on a similar lay off at the Viper plant because they too are unable to find work within their medical restrictions. Of those, four are African–Americans, and six are white employees.

Finally, Chrysler states that it laid Plaintiff off on March 17, 2005 because it could not find her work within her medical limitations. However, it did not know at that time that Plaintiff had filed charges with the EEOC as it did not receive a copy of the charge until March 21, 2007. This is supported by evidence and is uncontested.

## II. ANALYSIS

### A. STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material if proof of that fact would establish or refute one of the essential elements of a claim or defense and would affect the application of governing law to the rights and obligations of the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). The court must view the evidence and any

inferences drawn therefrom in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For a claim to survive summary judgment, the nonmovant must offer more than a mere scintilla of evidence as to the material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant's burden is satisfied where there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## B. LAW AND ARGUMENT–DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1. **Are Plaintiff's state and federal disability claims precluded by the contractual limitation on litigation? Yes.**

■ As was mentioned previously, Plaintiff as part of her employment agreed to a provision which waived any applicable statute of limitations and held her to a six-month limitation of actions for litigation action, specifically "six (6) months after the date of the employment action that is the subject of the claim or lawsuit." Defendant argues that since the litigation was initially filed on August 5, 2005, this precludes any alleged action that occurred prior to February 5, 2005. Plaintiff disagrees, citing case law from the Western District of Michigan, *Salisbury v. Art Van Furniture*, 938 F.Supp. 435 (W.D.Mich. 1996) (holding six month limitation periods are not applicable to ADA claims), as well as a Western District of Michigan case that did not apply a six-month limitation to a FMLA claim. *See Conway v. Stryker*

*Medical Division*, 2006 WL 1008670, 2006 U.S. Lexis 20753 (W.D.Mich.2006).

Both Michigan and Federal Courts acknowledge the power of parties to contract for a shortened statute of limitations. *Myers v. W.S. Life Ins. Co.*, 849 F.2d 259 (6th Cir.1988) (six-month litigation limitation in employment contract barred Elliott Larsen action and Michigan Handicapped Civil Rights action); *Rory v. Continental Ins. Co.*, 473 Mich. 457, 470, 703 N.W.2d 23 (2005) (an unambiguous contractual provision that states a shortened statute of limitations is to be enforced unless the provision violates law or is against public policy interests). In *Thurman v. DaimlerChrysler Inc.*, 397 F.3d 352, 357–359 (6th Cir.2004) the Sixth Circuit in a racial discrimination case upheld the identical language agreed to by Plaintiff, agreeing with a Michigan Court of Appeal ruling that found six-month limitation periods (1) sufficient time to investigate and file an action; (2) long enough to work out a practical abrogation of the right of action; and (3) enough time to ascertain the amount of loss or damage that stemmed from the action.[2]

Defendant cites two Western District of Michigan cases that refused to apply a limitation of action to an FMLA claim, and more relevant to this situation, to an ADA claim. One is *Salisbury v. Art Van Furniture*, 938 F.Supp. 435, 437–38 (W.D.Mich. 1996) in which the Court held that a contractual limitations period that effectually abrogates a claimant's rights should not be enforced, and emphasizing that in ADA cases, the EEOC enjoys exclusive jurisdiction. The other is *Conway v. Stryker Medical Division*, 2006 WL 1008670, 2006 U.S. Dist. LEXIS 20753 (W.D.Mich.2006) which cites the *Salisbury* case as prece-

---

**2.** The Complaint in *Thurman* cited violations of Michigan's Elliott Larsen Act and 42 U.S.C. § 1981.

dent for the finding that contractual limitations on FMLA claims are void.

What differentiates *Salisbury* from this matter is the timing of the receipt of the right to sue letter from the EEOC. In *Salisbury*, it took Plaintiff more than six months to receive a right to sue letter from the EEOC. Because of the delay, she could not bring her lawsuit until after her six month litigation period expired. The *Salisbury* court rejected that contractual limitation because it in fact abrogated Plaintiff's rights to relief under the ADA since the ADA first required a right to sue letter from the EEOC before she could bring suit.

In this instance, Plaintiff's contractual limitation on litigation did not abrogate her right to sue. Plaintiff received a right to sue letter on May 9, 2005. This means Plaintiff had ample opportunity to file her suit within the six month contractual period. In other words, the contractual agreement did not abrogate Plaintiff's right to sue because she had the opportunity to file, and in fact did file suit. As such Plaintiff should be held to the contractual limitation and any factual allegation relating to the disability claims that occurred prior to February 5, 2005 should be excluded.

### 2. Should Plaintiff's Disability claims be dismissed on summary judgment based on the merits? Yes

The sole actionable allegations under the disability claims are those relating to whether Defendant accommodated Plaintiff's disabilities to the extent possible. To establish an ADA violation, Plaintiff must prove: (1) she has a disability; (2) she is otherwise qualified for her job with or without a reasonable accommodation; and (3) that Defendant either refused to make a reasonable accommodation or made an adverse employment decision because of

her disability. *Smith v. Ameritech,* 129 F.3d 857, 866 (6thCir.1997); *see also Cotter v. Ajilon Services,* 287 F.3d 593, 597 (6th Cir.2002) (because the PWDCRA substantially mirrors the ADA, resolving Plaintiff's ADA claim should resolve the state PWDCRA claim).

■ Assuming Plaintiff is disabled under the provisions of the ADA, she bears "the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Kleiber v. Honda of America Mfg. Inc.,* 485 F.3d 862, 870 (6th Cir.1998). Reasonable accommodations do not force employers to eliminate essential functions, create new jobs, displace existing employees, or violate other employees' rights under a collective bargaining agreement. *Thompson v. DuPont deNemours & Co.,* 70 Fed.Appx. 332, 336 (6th Cir.2003).

■ As a matter of law, summary judgment should be granted because Plaintiff has failed to propose a reasonable accommodation. Plaintiff's doctor testified at deposition that Plaintiff is unable to perform her last job or to work on an assembly line. One proposed accommodation by Plaintiff was to add an assistant to assist Plaintiff in her former job. This was initially given to Plaintiff but budget constraints made it inefficient and costly. Further, this accommodation is equal to eliminating an essential function of the job, something the ADA does not require. *See Gilbert v. Frank,* 949 F.2d 637, 644 (2nd Cir.1991). Second, Plaintiff suggests several positions that could accommodate her limitations but has failed to propose positions that were vacant. *Thompson v. E.I. Dupont deNemours & Co.,* 140 F.Supp.2d 764, 784 (E.D.Mich.2001)(Rosen, J.). Finally, I find it difficult to conclude that a paid layoff that affords Plaintiff more than $37,000 a year is a termination or an adverse decision. Instead it resembles an

accommodation, one that is akin to a paid leave which is a reasonable accommodation according to the EEOC. *See* 29 C.F.R. 1630 at 407; *Hankins v. Gap, Inc.*, 84 F.3d 797, 801 (6th Cir.1996). As such, Plaintiff has failed to make a prima facie case that she proposed a reasonable accommodation or that DaimlerChrysler refused to make a reasonable accommodation for Plaintiff because of her disabilities.

### 3. Is Plaintiff's State Claim of racial discrimination precluded by the contractual limit on litigation? Yes.

■ Further, most of the Elliott–Larsen Act claim and the charge of intentional infliction of emotional distress must be dismissed under summary judgment because the facts supporting these allegations are barred by the contractual limitation on these actions. In other words, only the facts that allege Chrysler failed to provide a reasonable accommodation and that it retaliated against her by laying Plaintiff off are timely because those factual allegations fall after February 5, 2005 (which is six months prior to the August 5, 2005 filing of this lawsuit).

Most of the alleged facts that support the race discrimination charge occurred while Plaintiff was on the assembly line, prior to February 5, 2005. The racial discrimination claim relies on facts that took place more than six months prior to the filing of the lawsuit when Plaintiff was still working. Plaintiff had ample opportunity to address those facts in a lawsuit within the six month contractual limitation.

■ The remaining allegations that occurred after the February 5, 2005 pertain to the charge that Defendant retaliated against Plaintiff for filing a complaint with the EEOC. To establish a prima facie case of retaliation, Plaintiff must show (1) she engaged in a protected activity; (2) Chrysler knew she was engaged in a protected

activity; (3) Chrysler subjected Plaintiff to an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse action. *Garg v. Macomb County Community Health Services*, 472 Mich. 263, 273, 696 N.W.2d 646 (2005). Plaintiff makes a bare assertion that Chrysler knew that she was filing a charge with the EEOC and retaliated against her for doing so, but she has no evidence to support her contention that Chrysler knew she was filing an EEOC claim at the time of her layoff. Chrysler on the other hand presented a letter from the EEOC that implies Chrysler did not know of the EEOC charge until it received it in the mail on March 21, 2005, four days after Plaintiff was laid off *See McDonald v. Ford Motor Company*, 208 F.Supp.2d 837, 846 (N.D.Ohio 2002) (Defendant cannot retaliate against a protected activity that did not occur until after the alleged retaliatory action).

### 4. Is Plaintiff's state claim of Intentional Infliction of Emotional Distress barred by the contractual limitation on litigation? Yes.

The intentional infliction of emotional distress claim is based on the race discrimination claims, specifically the actions of Plaintiff's supervisor McKerley. Again, the facts of this claim occurred well after the contractual limitation on litigation expired. Even if the claim were allowed to proceed on the merits, the allegations mentioned such as employing a segregated assembly line, although despicable, are not necessarily outrageous or extreme nor did they seem to cause extreme emotional distress since Plaintiff continued to work in this situation, rather than file suit to address it or complain to superiors. Further, the claim would be that Chrysler allowed this situation to happen; however there is nothing alleged that indicates Chrysler even knew of this alleged segre-

gation, much less showed signs of intentionally condoning it.

### C. LAW AND ARGUMENT–PLAINTIFF'S MOTION TO DISMISS COUNT IV PURSUANT TO FED. R. CIV. P. 41(a)(2).

After the parties presented arguments in the aforementioned summary judgment motion and submitted additional briefing to this Court, Plaintiff submitted its Motion to Dismiss Count IV, pursuant to Fed. R.Civ.P.41(a)(2). In relevant part, Fed. R.Civ.P.41(a)(2) states, "an action shall not be dismissed at the plaintiff's instance save upon order of the court *and upon such terms and conditions as the court deems proper.*" (emphasis added). Considering the timing of this motion, it seems that Plaintiff may have read the proverbial writing on the wall, and is now trying to erase that writing. Given the fact that this Court has heard arguments and accepted several briefings on the issues presented in Defendant's Motion for Summary Judgment, I am compelled to rule on Defendant's Motion, and have done so. As such, Plaintiff's Motion to Dismiss Count IV is DENIED as moot, since granting Defendant's Motion has effectively dismissed the matter as a whole.

### III. CONCLUSION

For the reasons set forth above, I GRANT Defendant's Motion for Summary Judgment and DENY Plaintiff's Motion to Dismiss, pursuant to Fed.R.Civ.P. 41(a)(2) as moot.

**IT IS SO ORDERED.**